VOGELSANG'S ADMINISTRATOR, *Plaintiff in Error*, v. FISHER *et al.*

### In Banc, May 21, 1895.

1. **Sale**: VENDOR'S LIEN: WAIVER. A vendor of personal property who has possession of it at the time of the insolvency of the vendee may enforce a vendor's lien against it for the unpaid purchase price, although he has previously accepted the vendee's notes for the full sum of such purchase price.

2. ———: ———: POSSESSION. A distiller, pursuant to a contract with a dealer, made for him a quantity of whiskey, branding the barrel with the dealer's name as distiller and stored it in a United States bonded warehouse invoiced to the dealer who gave to the distiller notes for the purchase price. The contract stipulated that the dealer should not be responsible for the management of the distillery while being operated in his name and that the distiller should charge storage on the whiskey while in the warehouse and give it all the necessary care and deliver it free of charge on board the cars for shipment to the dealer. *Held*, that, the possession of the whiskey while in the warehouse was not in the dealer but was in the distiller, jointly with the government storekeeper, so as to give the vendor a right to a lien, on the insolvency of the dealer.

3. ———: WAREHOUSE RECEIPTS: PLEDGE: VENDOR'S LIEN. The giving of *non* negotiable warehouse receipts by a vendee of whiskey stored in a government bonded warehouse, to a creditor of such vendee to secure an antecedent debt operates only as a pledge of such property to secure said debt and does not affect an existing vendor's lien thereon.

*Appeal from the St. Louis City Circuit Court.*—Hon. G. W. Lubke, Judge.

Affirmed.

*David Goldsmith* for plaintiff in error.

(1) The court erred in permitting the defendants to ask directly of their witnesses, in whose possession the warehouse was, and also in whose possession the whiskey in controversy was. *Hart v. Railroad*, 94 Mo. 255; *Brown v. Plank Road Co.*, 89 Mo. 152; *Gavick v. Railroad*, 49 Mo. 276. (2) The instruction given by the court of its own motion was erroneous. R. S. U. S. 1878, secs. 3271 to 3274, 3294, 3295; supplement thereto, pages 1, 12, 286, sec. 6, and 288, sec. 17; *Newcomb, etc., Co. v. Cabell*, 10 Bush, 460; *Keil v. Harris*, 6 Atl. Rep. 750; *In re Hughes*, 12 Irish Ch. 466. (3) Instruction number 1, in regard to the delivery of possession to C. Conrad & Company, should have been given. *Gill v. Pavenstedt*, 7 Am. Law. Reg., N. S., 672; *United States v. McCullough*, 22 Int. Rev. Rec., 204; *Ex parte Luce*, 2 Lowell's Dec. 245; *Parker v. Byrnes*, 1 Lowell's Dec. 539. (4) Instructions numbers 2 and 6, in regard to the delivery of possession to C. Conrad & Company should have been given. *Hurry v. Mangles*, 1 Camp. 452; *Frazer v. Hilliard*, 2 Strob. (Law) 309; *Chapman v. Searle*, 3 Pick. 38; *Arnold v. Delano*, 4 Cush. 33; *Douglas v. Shumway*, 13 Gray, 458; *White v. Welsh*, 38 Pa. St. 396. Moreover, such a delivery satisfies the statute of frauds. *Bass v. Walsh*, 39 Mo. 199. (5) And delivery under that statute is identical with that which will terminate the vendor's lien. *Troop v. Hart*, 7 Duval (Canada), 541; *Kirby v. Johnson*, 22 Mo. 357; Blackburn on Sales [2 Ed.], p. 37; *Cusack v. Robinson*, 1 Best & Sm. 307; *Stafford v. McDonough*,

120 Mass. 290; *Rodgers v. Jones*, 129 Mass. 420; *Hewes v. Jordan*, 39 Md. 481; Browne on Statute of Frauds [4 Ed.], sec. 317. (6) Instructions numbers 4 and 5, as to the effect of the issue of the warehouse receipts to the plaintiff, should have been given. *First.* The assent to the issue of warehouse receipts by C. Conrad & Company being unlimited, extended, as a matter of law, to the issue of receipts as security for antecedent indebtedness; and, aside therefrom, the evidence amply established the right of C. Conrad & Company, to apply the receipts to that use. *Lord v. Bank*, 20 Pa. St. 384; *Pitts v. Foglesong*, 37 Ohio St. 676; *Bank v. Penfield*, 69 N. Y. 52. *Second.* Nor did the insolvency of C. Conrad & Company affect the right of that firm to issue warehouse receipts. *Hart v. Trust Co.*, 118 Pa. St. 570; *Conrad v. Fisher*, 37 Mo. App. 406. (7) The issue of the warehouse receipts being thus within the scope of the assent, the Silver Creek Distilling Company became, by virtue thereof, the bailee of the plaintiff, and the establishment of that relation between vendor and subvendee unquestionably debars the lien of the vendor. Benjamin on Sales [6 Am. Ed.], sec. 817; *Pierson v. Dawson*, Ell., Bl. & Ell. 448; *Troop v. Hart*, 7 Can. Sup. Ct. (Duval), 512; *Knights v. Wiffen*, L. R. 5 Q. B. 660; *Lucas v. Dorien*, 7 Taunt. 278; *Hawes v. Watson*, 2 B. & C. 539. In fact, even as to the right of stoppage *in transitu*, a shipment by the vendor to a subvendee terminates it. *Eaton v. Cook*, 32 Vt. 58; *Treadway v. Aydlett*, 9 Heisk. (Tenn.) 388; Jones on Liens, sec. 961; *Railroad v. Freed*, 38 Ark. 614. (8) The issue of the warehouse receipts also, under our law, constituted a symbolical delivery of the property represented by them. *Gibson v. Stevens*, 8 How. 384; *Newcomb, etc., Co. v. Cabell*, 10 Bush, 460; *Keil v. Harris*, 1 Penn. Co. Ct. 171; *Durr v. Hervey*, 44 Ark. 301; Jones on Pledges, sec. 280.

*Silas B. Jones* for defendants in error.

(1) When a purchaser of goods on credit becomes insolvent before the seller has utterly parted with the possession thereof, the lien of the seller for the price, which was waived by the original credit, at once revives, and he may hold the goods until he is paid for them. The fact that the purchaser has given a note in payment, which has not matured, does not destroy the right of lien on insolvency, if the note is held by the seller. *Company v. Stanard*, 44 Mo. 71; *Compang v. Plant*, 45 Mo. 517; *Arnold v. Delano*, 3 Cush. 33; *White v. Welsh*, 38 Pa. St. 396; 2 Benjamin on Sales, sec. 1130, *et seq.*, 1136. (2) The right of lien in such case arises from the fact of insolvency of the purchaser, and not from the manner in which it discovers itself, or whether it is discovered. *Schwabacher v. Kane*, 13 Mo. App. 126; *Benedict v. Schoettle*, 12 Ohio St. 515; *Loeb v. Peters*, 63 Ala. 243; *Muller v. Pondir*, 55 N. Y. 325; *Arnold v. Delano*, 3 Cush. 33. (3) Such right of lien arises from the implied condition on which the credit is given, that the purchaser will maintain his solvency. *Arnold v. Delano*, 3 Cush. 33; *Muller v. Pondir*, 55 N. Y. 336, *et seq.*; *Bloxam v. Sanders*, 4 B. & C. 941; *Benedict v. Schoettle*, 12 Ohio St. 520; *Heinz v. Transfer Co.*, 82 Mo. 233; 2 Kent's Com. [13 Ed.] 493. (4) The result to be deduced from all the modern cases on the subject is, that if the insolvency of the purchaser occur while the seller is in the actual possession of the goods, the seller may assert his lien, though the purchaser may have the title to, and be in constructive possession of, the goods. *Company v. Stanard*, 44 Mo. 71; *Company v. Plant*, 45 Mo. 517; *Kirby v. Johnson*, 22 Mo. 354; *Harvey v. Association*, 39 Mo. 211; *Sigerson v. Kahmann*, 39 Mo. 206; *Mohr v. Railroad*, 106 Mass. 67; *Dickson v. Yates*, 5 B. & Ad. 313; *Miles v.*

*Gorton*, 2 C. & M. 504; *Townly v. Crump*, 4 Ad. & E. 58; *Grice v. Richardson*, 3 App. Cas. 319; *Arnold v. Delano*, 3 Cush. 33; *White v. Welsh*, 38 Pa. St. 396; *Wanamaker v. Yerkes*, 70 Pa. St. 443. (5) A symbolic or other constructive delivery of a chattel may divest the seller of his possession and hence destroy his lien, if the chattel be a cumbersome article not capable of manual possession or delivery; but no such delivery will destroy the vendor's lien, if the chattel remain in the actual possession, charge and keeping of the vendor. *Harvey v. Association*, 39 Mo. 211; *Thompson v. Railroad*, 28 Md. 396; *Shindler v. Houston*, 1 N. Y. 261. (6) Again, if the seller under the contract of sale is to do any act to the goods to fully perform the contract on his part, which has not been done when the buyer's insolvency occurs, the seller may assert his lien. *Mohr v. Railroad*, 106 Mass. 67; *Keeler v. Goodwin*, 111 Mass. 490; *Gill v. Pavenstedt*, 7 Am. L. R. (N. S.) 672; *Company v. Stanard*, 44 Mo. 71. (7) The seller's lien, and the right of stoppage *in transitu*, which is a mere extension of the lien, had its origin in courts of equity, and is highly favored. "It is based on that very obvious principle of justice and equity, that one man's goods should not be applied to the payment of another man's debts." *Heinz v. Transfer Co.*, 82 Mo. 233; *D'Aquila v. Lambert*, 2 Eden, 77; *Hamberger v. Rodman*, 9 Daly, 93; *Mueller v. Pondir*, 55 N. Y. 325. (8) A subvendee or pledgee of the first vendee acquires no rights superior to those of the first vendee, unless the vendor has by his conduct estopped himself to assert his lien against such subvendee or pledgee. *Company v. Plant*, 45 Mo. 517; 2 Benjamin on Sales, sec. 1140. (9) The federal statute (R. S. U. S. sec. 3274) provides that "every distillery warehouse shall be in the joint custody of the storekeeper and the proprietor thereof." No reason or authority is shown by

appellant's counsel, why the joint possession of the storekeeper for the protection of the United States, should in any way curtail the effect of the possession of the distiller for his own protection. As far as we are advised the authorities give no such force to the control which the government exercises for its own protection. *Gill v. Pavenstedt*, 7 Am. L. R. (N. S.) 672; *Stanard's case*, 44 Mo. 84; *Ober v. Carson*, 62 Mo. 200. (10) A warehouse receipt as between the parties is open to explanation and contradiction like any other receipt. Bigelow on Estoppel [3 Ed.], p. 471 *et seq.*; 2 Wharton on Ev., sec. 1064; 1 Greenleaf on Ev., sec. 305; *Carroll v. Railroad*, 14 Mo. App. 490. (11) The right of stoppage *in transitu* is a mere extension of the vendor's lien. An attaching creditor does not become a purchaser for value so as to cut off the right of stoppage *in transitu*. *Schwabacher v. Kane*, 13 Mo. App. 126. (12) The right of stoppage *in transitu* may be defeated by a transfer of the bill of lading to a purchaser for value; but one who takes the bill of lading merely as security for an antecedent debt is not a purchaser for value in such a sense. *Loeb v. Peters*, 63 Ala. 243; *Lesasier v. Southwestern*, 2 Wood C. C., 35; see, also, *Halbrook v. Vose*, 6 Bosw. 76, 107; *Lee v. Kimball*, 45 Me. 172. (13) The taker of commercial paper merely as collateral security for an antecedent debt is not a purchaser for value, and has no greater rights than the person from whom he obtained it. *Goodman v. Simonds*, 19 Mo. 106; *Logan v. Smith*, 62 Mo. 455; *Davis v. Carson*, 69 Mo. 609; *Brainard v. Revis*, 2 Mo. App, 490; *Terry v. Hickman*, 1 Mo. App. 119; *Hodges v. Black*, 8 Mo. App. 389; s. c., 76 Mo. 537; *Lee v. Smead*, 1 Metc. (Ky.) 628; *May v. Quinby*, 3 Bush. 96.

MACFARLANE, J.—The suit is for damages for the conversion of two hundred and seventy-five barrels

whiskey. Plaintiff's right to recover depends upon the sufficiency of certain warehouse receipts issued to her by C. Conrad & Company, purporting to transfer to her the whiskey, then in a distillery warehouse of the United States under the requirements of the internal revenue laws. Defendants claim under a vendor's lien retained for the purchase price of the whiskey sold by Stagg, Hume & Company to the said Conrad & Company.

On a trial in the circuit court a judgment was rendered for defendants, and plaintiff appealed. The rights of the parties under their respective claims are to be determined.

This suit and two others involving the identical issues under the same facts were tried in the same court at the same time with like results. Two of them were appealed to the St. Louis court of appeals, where, after elaborate briefs and arguments of the parties, the judgments were affirmed in an exhaustive opinion by THOMPSON, J. The opinion was written in *Conrad v. Fisher*, and will be found reported in 37 Mo. App. 357. That opinion leaves but little to be said on the questions in issue, and relieves us from any extended review of the authorities on most of the questions involved.

As a foundation of our remarks we adopt the statement of Judge THOMPSON, which is as follows:

"During the time when the rights in controversy arose, Charles W. Conrad was doing business in St. Louis, Missouri, under the name and style of C. Conrad & Company. The defendants were partners in two different firms (Gregory, Stagg & Co. and W. S. Hume & Co.) engaged in the business of distillers and rectifiers at Silver Creek, Kentucky. A third firm, Stagg, Hume & Company, and also the two firms above named, of which they were successors, had had

a course of dealing with C. Conrad & Company, similar to that which took place under the contract hereafter set out upon which the rights now to be disposed of depend. There is a great amount of testimony in the record as to the nature of this course of dealing, and the facts adduced by this testimony are set out at considerable length by the appellants in their statement, of which we will speak hereafter.

"As introductory to the contract itself, it may be stated that Conrad, doing business at St. Louis under the name of C. Conrad & Company, had acquired an extensive reputation for a certain kind of beer, which had been brewed and bottled for him in St. Louis, and which he had sold under the name of Budweiser beer. He desired to found a similar reputation in respect of certain kinds of whiskey; but, as he was not a distiller, it was necessary to find a distiller who would make for him whiskey of the desired grade, and who would assist him in holding himself out to the world as the distiller of it. The defendants were willing to make such whiskey for him and to assist him in representing himself to the public as the distiller of it. In order to carry out this purpose, the following contract was entered into:

"'This agreement made and entered into this twenty-fifth day of October, 1882, between Stagg, Hume & Company, of St. Louis, Missouri, of the first part, and C. Conrad & Company, of St. Louis, Missouri, of the second part, witnesseth:

"'That the party of the first part agrees to make for the party of the second part, during the months of November and December, 1882, and January, 1883, at the Silver Creek distillery in Madison county, Kentucky, twenty-one hundred barrels of Moss Rose Sour Mash Bourbon Whiskey, and four hundred barrels Governor's Choice Rye whiskey, at forty-six and one

fourth cents per proof gallon for the Bourbon and sixty-two and one half cents per proof gallon for the Rye—the Bourbon to be invoiced when all made, and the Rye to be invoiced when all made, as per return of United States gauger on duty at distillery.

" 'That, during the manufacture [of the whiskey herein contracted for, the firm name of the party of the second part (Conrad & Co.) shall be used as distillers, provided that the said party of the second part shall not in any way, be held responsible or liable to the United States government for the conduct of the distillery.

" 'That settlement for the whiskey shall be made as follows: The party of the second part shall give their notes, or acceptances, each for six hundred dollars, payable, the first note on June 6, 1883, and a note payable on the Saturday of each week following, until all are paid. That the whiskey shall be of the standard quality of the "Hume" brand the cooperage first class, eight-iron-hooped barrels, well charred, branded with the firm name of the party of the second part as distillers—all brands required to be furnished by the party of the first part—the packages to contain from forty-six to fifty gallons each, and the proof of the whiskey to run as nearly uniform at one hundred and one per cent. as it is possible to make it.

" 'That storage shall be charged at the rate of five cents per barrel per month from date of entry into United States warehouse number 541, eighth district of Kentucky, and that all care and attention shall be given the packages while in store by the party of the first part.

" 'That, upon the release from bond and payment of United States and state taxes and storage by the party of the second part, packages shall be delivered,

free of charge, by the party of the first part, on board of the cars at Silver Creek, Kentucky.

" 'That the party of the first part, if desired to do so by the party of the second part, shall place insurance, loss, if any, payable to the party of the second part, who shall pay the premium at not to exceed current rates.

" 'That, if from fire or other casualty, the party of the first part shall be unable to comply with the terms of this contract in full or in part, the said party of the first part shall not, in any way, be held liable for such non-fulfillment of contract.

" 'That, when the whiskey is all invoiced and the notes are given for the amount, the party of the first part agrees to pay to the party of the second part two hundred and fifty dollars, in consideration of which the party of the second part agrees to give the party of the first part two cases containing twelve quart bottles of the best French champagne and two casks of Budweiser beer.

" 'Witness our hands this twenty-fifth day of October, 1882, at St. Louis, Mo.

" ' (Signed) STAGG, HUME & Co.,
" 'C. CONRAD & Co.'

"The whiskey in controversy was made (or caused to be made in the manner hereafter stated) by Stagg, Hume & Company, under this contract, and was placed in United States bonded warehouse number 541, as therein provided for. On the ninth of February, 1883, Conrad being in failing circumstances and being indebted to these plaintiffs in various amounts which had long been due, delivered to each one of them, without their solicitation, a warehouse receipt for a quantity of this whiskey, as collateral security for the indebtedness owing to them, they asking him no questions and he making to them no statements at the time as to why

he did this. On the sixteenth of the same month he suspended payment and his insolvency became known and published; and on the twenty-fifth he made an assignment for the benefit of his creditors. Meantime the plaintiffs had taken no steps to withdraw the whiskey from the government warehouse, but merely held the warehouse receipts, parting with no new value for them. The notes given by Conrad to Stagg, Hume & Co. for the whiskey were in their possession, not negotiable, and unpaid at the time of his suspension. Conrad was insolvent to the extent that, although much of his indebtedness was secured, his unsecured creditors received from the administrator of the unpledged assets of his estate no more than ten cents on the dollar.

"Soon after his suspension, Stagg, Hume & Company sued out an attachment in Madison county, Kentucky, to enforce a vendor's lien upon the whiskey. The other two partnership firms already named (Gregory, Stagg & Co. and W. S. Hume & Co.), of which two firms the defendants were members, being creditors of Conrad on other accounts, sued out other attachments. These attachment suits were, by agreement of the various attaching creditors, consolidated, and in the consolidated suit judgment was rendered for the plaintiffs, fixing their respective priorities. The property was sold thereunder; and, although Stagg, Hume & Company proved up their claim as holders of the notes given by Conrad for the purchase price of the whiskey before the assignee of his estate, and received a dividend in common with the other creditors, yet the total amount which was realized from the sale of the whiskey in Kentucky in the various attachment suits, added to the dividend thus received by them, was not sufficient to liquidate the indebtedness evidenced by the notes given by Conrad to them for the purchase price of the whiskey."

The court, on its own motion, gave the following instruction:

"If the court finds from the evidence that the contract of October 25, 1882, between Stagg, Hume & Company and Charles W. Conrad, admitted in evidence, was entered into by Stagg, Hume & Company, and that the whiskey in controversy was made under said contract at the instance and request of Stagg, Hume & Company by the Silver Creek Distilling Company, and placed by it in its bonded warehouse at Silver Creek under said contract, and that Charles W. Conrad failed and suspended business in January, 1883, and that at the time of such failure Stagg, Hume & Company, or the Silver Creek Distilling Company, jointly with the storekeeper for the United States, were in the actual possession of the said whiskey in the said bonded warehouses, and that the notes given by Charles W. Conrad in settlement for the said whiskey have never been paid, and are now, and have always been, held by Stagg, Hume & Company, then the court declares, as a matter of law, that at the time of said Conrad's failure and suspension of business the said Stagg, Hume & Company had a vendor's lien on said whiskey and a right to retain possession thereof, either themselves or by and through said distilling company, until they were paid therefor, provided the court further finds from the evidence that, at the time the warehouse receipts for the whiskey in controversy were issued to plaintiff, Charles W. Conrad was, in fact, insolvent, and further that neither the distilling company, for itself or on behalf of said Stagg, Hume & Company, nor Stagg, Hume & Company, after they or either of them became aware of such insolvency, did, with full knowledge of the circumstances under which said receipts were issued, ratify their issuance by Charles W. Conrad."

And to the giving of the said instruction, so given by the court of its own motion, the plaintiff Paulina Vogelsang, then and there duly excepted at the time.

I.   That a vendor of personal property is, under certain conditions, entitled to a lien thereon for the unpaid purchase price is not disputed. This right rests upon two essential conditions, the insolvency of the vendee, and the continued possession of the property by the vendor.

That Conrad & Company were insolvent at the time defendants asserted their lien can not be questioned under the evidence in this record. The fact that the notes of the vendee, payable in the future, had been accepted by the vendor, does not extinguish the right to the lien. In such case there is always an implied condition that the vendee will keep his credit good until the term of the credit shall have expired. These principles are well established. See *Conrad v. Fisher*, 37 Mo. App. 357, and authorities cited.

II.   It is clear from the contract between the parties that, while it was provided that the whiskey should be made in the name of C. Conrad & Company, the adoption of that name was a mere fiction employed by the parties for the purpose of carrying out the private objects of Conrad, to represent himself, to his customers, as being the distiller of certain brands of whiskey. The objects could not be otherwise accomplished under the internal revenue laws of the United States which required the name of the distiller to be branded upon the barrels. The contract itself, defining what should be done by the parties, leaves no doubt whatever that Stagg, Hume & Company, by means of the Silver Creek Distilling Company, should make for Conrad the whiskey which was the subject of the contract. Conrad & Company were expressly excepted from respon-

sibility or liability to the United States government for the conduct of the distillery.

It is provided, expressly or by necessary implication, that the whiskey, when made and placed in the distillery warehouse, should be invoiced to Conrad & Company, who should then give their notes for the purchase price. But it was also provided that Stagg, Hume & Company should charge storage at the rate of five cents per barrel per month from the date of entry into the warehouse and that they should give all care and attention to the whiskey while in store. This provision in reference to delivery also appears: "Upon the release from bond and payment of United States and state taxes and storage by the party of the second part (Conrad & Co.), packages shall be delivered, free of charge, by the party of the first part (Stagg, Hume & Co.) on board the cars at Silver Creek, Kentucky."

It appears from the evidence that the whiskey was manufactured under the contract, and when placed in the warehouse it was invoiced to Conrad & Company, who then gave their notes for the purchase price. The barrels were branded with the name of Conrad & Company as distillers, and the same name was placed over the door of the warehouse.

Now, plaintiff claims that these acts, under the contract, vested in Conrad & Company, not only the title to the whiskey, but all the possession thereof Stagg, Hume & Company were capable of giving, under the statute regulating the use of distillery warehouses.

The court, by an instruction given on its own motion, authorized a verdict for defendants on the hypothesis that Stagg, Hume & Company and the United States storekeeper were jointly in the actual possession of the whiskey. Counsel for plaintiff insists that under the internal revenue laws of the United

States the whiskey, while in the bonded warehouse, awaiting the payment of taxes thereon, was in the exclusive possession of the government and the instruction was, therefore, contrary to law.

Section 3274, United States Revised Statutes of 1878 provides: "Every distillery warehouse shall be in the joint custody of the storekeeper and the proprietor thereof. It shall be kept securely locked, and shall at no time be unlocked, or opened, or remain open, unless in the presence of such storekeeper, or other person who may be designated to act for him, as provided by law; and no article shall be received in or delivered from such warehouse except on an order or permit addressed to the store keeper and signed by the collector having control of the warehouse.

The only interest the United States has in distilled spirits, while under bond in the warehouse, is the payment of the taxes thereon. The statute was neither intended to deprive the owner of the spirits of any rights of proprietorship therein, consistent with provisions of the law designed for securing the payment of the taxes, nor to impose any responsibility upon the government for its safe keeping. The deposit is made for the benefit of the distiller to enable him to give bond for the future payment of the taxes, which sometimes exceeds the value of the spirits, instead of paying it at once. The distiller has the right to care for, secure and protect his property. The warehouse is, by the express term of the statute, "in the joint custody of the government storekeeper and the owner."

The rights of the owner are declared under the contract wherein it stipulated that "all care and attention shall be given the packages while in store by the party of the first part," meaning Stagg, Hume & Company.

The supreme court, in discussing the liability of the owner for the taxes on spirits stolen from a warehouse, recognized this right of the owner. Mr. Justice GRAY says: "The government assumed no responsibility to him [the owner] for their safe keeping. If he was not satisfied with the security of the warehouse, he had only to take any measure, consistent with the access and supervision of the revenue officers, to make it more secure, or else to pay the tax and remove the spirits. The only duty which the revenue officers owed in regard to the security of the warehouse and the safe keeping of the spirits therein, was to the government, and not to the defendants; and any negligence of those officers gave the defendants no rights against the government, and afforded them no excuse for not performing their obligation according to its terms." *United States v. Witten*, 143 U. S. 76.

Under the terms of the contract, and the facts as they actually existed, rather than as they were made to appear to the revenue officers, all taken with the requirements of the revenue law, which must be read with them, we are of the opinion that the possession of the whiskey, from the time of its deposit, was in Stagg, Hume & Company, jointly with the storekeeper.

III. But it is insisted that, by invoicing the goods to Conrad & Company and accepting their notes for the purchase price, a complete transfer of both title and possession was effected, so far as these results could be accomplished while the whiskey was in bond, and that, therefore, the right to a vendor's lien was extinguished.

It is true that, taking the acts done by the parties, making the deposit entry in the warehouse in the name of Conrad & Company, as distillers; stamping upon the barrels the name of Conrad & Company as distil-

lers; placing over the door of the distillery the name of Conrad & Company; accepting their notes in payment for the whiskey, and delivering the invoices, would, standing alone, show a complete delivery and waiver of the lien. But, as has been seen, these acts were done under a written contract between the parties by which they are explained. The name of Conrad & Company was used as distillers by agreement for purposes of his own. In fact, Stagg, Hume & Company, by the instrumentality of the Silver Creek Distilling Company, were the distillers, and they used the name of Conrad & Company as the one under which they manufactured, marked and deposited the whiskey in bond. They were to give all care and attention to the whiskey "while in store," and deliver it on board the cars at Silver Creek when released from bond. It was also expressly agreed that Conrad & Company should not "in any manner be held responsible or liable to the United States government for the conduct of the distillery." With the explanation of the acts of the parties given by the contract between them, it is very clear that Stagg, Hume & Company, as distillers, were to remain in the possession and custody of the whiskey, caring for and protecting it until released from bond and delivered on the car.

We find no error in the instructions of the court on this question. The possession of Stagg, Hume & Company was sufficient to authorize them to assert their lien as between them and the purchaser, Conrad & Company. *Southwestern, etc., Co. v. Stanard*, 44 Mo. 71; *Southwestern, etc., Co. v. Plant*, 45 Mo. 518; *Conrad v. Fisher*, 37 Mo. App. 372 *et seq.*, and authorities cited.

IV. The proposition that seems to be insisted on with greatest confidence by counsel is, that the delivery

of the warehouse receipts by Conrad & Company to plaintiff determined the vendor's lien.

The evidence tended to prove that Conrad & Company had authority from Stagg, Hume & Company to issue warehouse receipts in respect to whiskey while in store in the distillery warehouse at Silver Creek, Kentucky. That the warehouse receipts in question were given by Conrad & Company and accepted by plaintiff, the mother-in-law of Conrad, for the purpose of securing a debt of long standing, due by the former to the latter, and for no other consideration, is undisputed. The question is, whether the rights secured by plaintiff under the warehouse receipts were superior to the rights of defendants under their vendor's lien. In other words, did plaintiff take her rights free from the equities defendants could have asserted against Conrad & Company.

The warehouse receipts, five of which were issued to plaintiff, were in the following form:

"Office of C. Conrad & Co., Proprietors Moss Rose Distillery,

"SILVER CREEK, MADISON Co., KY.,}
"January 9, 1883.

"Received from Mrs. Paulina Vogelsang, on storage in our U. S. bonded warehouse, at Distillery No. 541, located at Silver Creek, in Madison county, Kentucky, the following described Governor's Choice Rye, for account of and subject to risk and order of Mrs. Paulina Vogelsang.

"Deliverable only on return and surrender of this receipt, and payment of government tax, interest and charges.

"Loss or damage by fire, the elements, leakage or shrinkage, at owner's risk."

(Here is contained the description of the whiskey, the same consisting of seventy-five barrels.)

"Storage 5c. per bbl. per month after January 9, 1882.

"(Signed)      C. CONRAD & Co.,<br>"Proprietors."

(On the reverse side is found the following notice):

"The holder of this receipt desiring to withdraw from bond the whiskey, or any part thereof, is requested to hand this receipt to Messrs. C. Conrad & Company, Nos. 411 to 419 N. Sixth street, St. Louis, Missouri, remitting them for tax, and all charges. Under no circumstances will goods be delivered or shipped until this receipt is returned.

"C. CONRAD & Co."

It will be observed that this receipt is not made negotiable "by written indorsement thereon" as required by statute (R. S. 1879, sec. 558). It also purports on its face to have been made in the state of Kentucky, but it was in fact made and delivered in this state. The laws of Kentucky in respect to the negotiability of such receipts were not put in evidence. Whether we treat the receipt as governed by the laws of this state or those of the state of Kentucky, the result will be the same. It would have the effect only that is given it by the common law. It would, therefore, only operate as a pledge of the whiskey as security for the precedent debt due from Conrad & Company to plaintiff. *Conrad v. Fisher, supra,* and cases cited.

As was said by Judge THOMPSON in *Conrad v. Fisher, supra* (*loc. cit.* 407): "It is now the recognized law of this country that the owner of goods, or one having the legal right to sell or to pledge them, may invest another with the full title and constructive possession of them, by transferring to him a bill of lading or a warehouse receipt which has been issued as

their symbolical representative, either by a carrier or a warehouseman in whose custody they are, so as to discharge the vendor's lien or his right of stoppage *in transitu*, if the transferee of the bill of lading or warehouse receipt receives it *bona fide* and *for a valuable consideration.*" *Lickbarrow v. Mason*, 2 T. R. 63.

Whatever the rule may be in respect to the rights of the assignee of strictly negotiable paper, taken before maturity, and to which the assignee himself becomes a party, we do not think one who, in the absence of a statutory regulation, takes a mortgage of property, or a bill of lading or warehouse receipt, as security for an antecedent debt, merely, and without other circumstance, is to be regarded as a purchaser for value in the sense that he would take his security freed from existing equities.

The rule is thus stated by Mr. Pomeroy: "A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before." 2 Pomeroy's Eq. Juris. [2 Ed.], sec. 749.

So it was said in a leading case: "Whatever the rule may be in the case of negotiable instruments, it is well settled that a conveyance of lands or chattels as a security for an antecedent debt, will not operate as a purchase for value, or defeat existing equities." 2 Am. Lead. Cases [5 Am. Ed.] 233; *Napa Valley Wine Co. v. Rinehart*, 42 Mo. App. 183.

In *Railroad v. Bank*, 102 U. S. 14, it was held that the transferee of negotiable paper before maturity is not affected by equities or defenses between the prior parties of which he had no notice, though taken merely as security for an antecedent debt, and without other circumstance. The same court has since held that the

rule does not apply to one who has taken a mortgage on chattels for a like purpose. The former of these decisions is placed upon the peculiar character and commercial .use of negotiable paper. *Bank v. Bates*, 120 U. S. 564.

The court in the latter case, after stating the principles decided in the former, asks and answers this pertinent question: "Do these principles apply to the case of a chattel mortgage * * * debt, and in obtaining which the mortgagee has neither parted with any right or thing of substance nor come under a binding agreement to postpone or delay the collection of his demand? Upon principle, and according to the weight of authority, this question must be answered in the negative."

Our conclusion is that the warehouse receipts in question only had the effect of transferring the title of the whiskey to plaintiff as security for her debt, and was not for value in the sense that extinguished the equitable rights of Stagg, Hume & Company to their vendor's lien. Judgment affirmed. All concur.