## MISSOURI BROOM MFG. CO. et al. v. GUYMON.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1902.)

No. 1,609.

**1 SALE UNDER FALSE REPRESENTATIONS—RECOVERY OF PROPERTY—FORM OF ACTION.**

Where a bill averred that a firm purchased broom corn in controversy with intent not to pay for the same, that the sale was induced by fraud, and that immediately after discovering the fraud complainant elected to rescind the sale and reclaim the property sold, the action must be

considered as an action to recover personal property, and the buyer and his vendees with notice be treated as trustees for the complainant.

**2.** SAME—BILL—MULTIFARIOUSNESS—RIGHT TO OBJECT.

Where a bill to recover personal property claimed to have been sold and delivered through the buyer's fraud alleged that one of the stockholders of the buyer had not paid for his stock, and had received money from the buyer, which he should refund, such allegations, though improper, where not prejudicial to other defendants, and the bill having been dismissed as to such stockholder, such other defendants could not claim that the bill was multifarious.

**8.** SAME—JUDGMENT OR LIEN CREDITOR.

In a proceeding to establish a constructive trust of personal property claimed to have been sold and delivered under false representations, and to compel the trustee to restore the trust property or account for its proceeds, it is immaterial that plaintiff is not a judgment or lien creditor, and has not established his demand at law.

**4.** SAME—REPLEVIN—ADEQUATE REMEDY AT LAW.

In an action to enforce a constructive trust in broom corn claimed by complainant to have been sold and delivered under false representations of the buyer, it was alleged that part of the broom corn, which had not been worked up by the buyer, had been mingled with other corn, and was difficult of identification; that the property had been twice sold, and the rights of the alleged purchaser would be the subject of investigation; and that part of the corn had been manufactured and assigned to third persons, who were acting in collusion with the alleged trustees. *Held*, that plaintiff did not have an adequate remedy at law by an action of replevin, and hence equity was entitled to assume jurisdiction.

**5.** SAME—BONA FIDE PURCHASERS—CONSIDERATION—EXTENSION OF TIME—PRE-EXISTING DEBT.

Where a fraudulent purchaser of personal property gave a deed of trust to secure pre-existing debts, covering the property purchased which was not paid for, and such deed entitled the mortgagee to take possession of the property at once, and inventory and sell the same at public or private sale, such mortgagee was not entitled to claim, as against the defrauded seller of the goods, that he was a bona fide purchaser on the ground that the mortgage also granted the mortgagor a definite extension for the payment of the debts as a consideration of the mortgage.

**6.** SAME—DAMAGES.

Where a seller sued in equity to enforce a constructive trust of the goods on the ground that the sale had been made by fraud, and that defendant was chargeable as trustee, and pending the suit the purchasers from the fraudulent vendee were allowed to dispose of the property, and hold the proceeds to await the result, and they sold the same at a larger price by reason of an advance in the market, the plaintiff was entitled to the actual value of the property at the time it was sold by such vendees, and was not limited to the original contract price.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

E. T. Guymon, the appellee, exhibited an amended bill of complaint, on which this case was eventually tried, against the Missouri Broom Manufacturing Company, David Loewen, the Exchange Bank of Jefferson City, William A. Dallmeyer, William Q. Dallmeyer, H. Clay Ewing, and Arthur M. Hough, the appellants, which contained, in substance, the following allegations: That in June, 1897, the complainant was induced, by certain false and fraudulent representations made by A. Loewen, who was the president of the Missouri Broom Manufacturing Company (hereafter termed the "Broom Company"), to ship and sell to the latter company a large quantity of broom corn of the value of $3,812.21, which the company received not intending to pay for it; that by the terms of the sale one-third of the purchase money was to be paid in cash and the balance in 60 days, but that

the complainant, after the shipment and delivery of the broom corn, was induced, by certain other fraudulent representations, to accept the broom company's notes dated September 4, 1897, one due in 6 days, one in 16 days, and the other on October 2, 1897, for the entire purchase price; that on September 28, 1897, the broom company, which was engaged in the manufacture of brooms in the Missouri penitentiary at Jefferson City, Mo., executed a deed of trust to A. M. Hough, as trustee for the Exchange Bank of Jefferson City, and David Loewen, which deed of trust conveyed all of the broom company's property of every kind and description, and was made to secure the payment of alleged debts of the broom company, specified therein, to the amount of $9,212.25; that a part of the complainant's broom corn had been manufactured into brooms, and mingled with other brooms, prior to September 28, 1897, and that the residue thereof was at the time mingled with other broom corn belonging to the broom company, and was stored in warehouses in Jefferson City, Mo., when the deed of trust was executed, and was covered by that conveyance; that Hough, as trustee, took possession of all of the property of the broom company on the execution of the deed of trust, including the broom corn which belonged to the complainant and was then in warehouses at Jefferson City, and that he did so with full knowledge of all the facts and circumstances under which it had been obtained by the broom company from the complainant. The bill further alleged, in substance, that in pursuance of the powers conferred by the aforesaid deed of trust, Hough, as trustee, on October 7, 1897, sold all of the property thereby conveyed to the defendants H. Clay Ewing, William Q. Dallmeyer, and William A. Dallmeyer, ostensibly for the sum of $3,000; that in said transaction the vendees last named acted merely as agents of the Exchange Bank of Jefferson City, paying nothing for the property which they acquired, and at the time of the purchase were well aware that the complainant had filed his original bill, praying for a restraining order and the appointment of a receiver; that said vendees, on October 9, 1897, sold all of said property to the defendant David Loewen, and agreed to assign to him the debts which were secured by the aforesaid deed of trust, on condition that he pay to the vendees the sum of $6,000, evidenced by six promissory notes, which were executed by David Loewen and I. J. Ringolsky; that in and by said contract of sale said vendees retained the title to the property which they pretended to sell until the purchase money evidenced by said notes had been fully paid; that at the time of said alleged sale to David Loewen and at the time of the execution of the deed of trust to Hough, and long prior thereto, said David Loewen was fully cognizant of the fraud that had been perpetrated on the complainant, and was well aware of his right to rescind the sale; that David Loewen and A. Loewen, the president of the broom company, were copartners in business, and transacted business at the city of St. Louis, Mo., under the name of David Loewen & Son; that said firm had an account with the broom company on its books, the style of which account was, for some unexplained reason, changed about the date of the transactions aforesaid; that in August and September, 1897, the broom company shipped many brooms that had been made out of the material purchased from the complainant to David Loewen & Son at St. Louis, Mo., for the fraudulent purpose of selling them, and defrauding the creditors of the broom company, and that a large part of the receipts of the broom company during said months was turned over to David Loewen & Son by collusion with that firm, to defraud the complainant and other creditors of the broom company. The complainant further alleged in his bill that he discovered the fraud which had been practiced upon him, and that the aforesaid purchase was made with no intent on the part of the broom company of paying him for the commodity purchased, only a week prior to the filing of his original bill herein, which appears to have been exhibited on October 8, 1897; that on discovering the fraud he went immediately from the state of Kansas, where he resided, to Jefferson City, Mo., for the purpose of surrendering the notes which he had received and rescinding the fraudulent sale, but that he was unable to find any officer or agent of the broom company to whom he could make the tender; that he accordingly tendered the notes in court on the filing of his bill; and that by virtue of the facts aforesaid, the complainant

was entitled to recover from the defendants the broom corn which he had sold, and the proceeds of such as had been manufactured into brooms, but that, in view of all the circumstances, he was without an adequate or sufficient remedy at law to fully redress the wrong. He accordingly prayed for the appointment of a receiver of the property which remained in specie; that the part thereof to which he was entitled might be determined; that David Loewen and A. Loewen might be compelled to account for the property, or the proceeds thereof, which they had received from the broom company; and for general relief.

When the original bill was exhibited, and the application for an injunction and the appointment of a receiver was heard, the lower court, in lieu of appointing a receiver, made an order, in substance, directing that the persons then in charge of the property in controversy should continue in charge thereof, with power to sell the same and manufacture it into brooms, rendering accounts to the court at intervals of all their doings in that behalf. Acting under this order, which practically constituted the defendants, or some of them, receivers, the property, as it seems, had been sold before a final decree was reached, and the proceeds were in the custody of the Exchange Bank at Jefferson City, and held by it for distribution, pursuant to the provisions of such decree as might be entered. By the provisions of the decree, from which the defendants below have appealed, the deed of trust of date September 28, 1897, the sale thereunder by Hough, and the sale by his vendees to David Loewen were each set aside and annulled in so far as they undertook to convey the broom corn that was sold by the complainant to the broom company, and the funds in the hands of the Exchange Bank were impressed with a trust in favor of the complainant in the sum of $3,000, that being the ascertained value of the 60 tons of broom corn which were sold by the complainant. The Exchange Bank was further directed to pay to the complainant, out of the funds remaining in its hands, the sum of $402.68, being that portion of the fund which David Loewen would be entitled to receive from it pursuant to the provisions of the aforesaid deed of trust.

Edwin Silver (F. M. Brown, on the brief), for appellants Exchange Bank, H. Clay Ewing, William A. Dallmeyer, William Q. Dallmeyer, and Arthur M. Hough.

I. J. Ringolsky, for appellant David Loewen.

Henry M. Beardsley (Alfred Gregory and Charles H. Kirshner, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is manifest, we think, from an inspection of the bill, the substance of which has been stated above, that the proceeding at bar must be characterized as an action to recover personal property and the proceeds thereof, which property the complainant below was induced to sell and ship to the Missouri Broom Manufacturing Company (hereafter termed the "Broom Company") by means of false and fraudulent representations that were made by certain officers of that corporation to induce the sale. The bill distinctly avers that the broom company made the purchase of the broom corn in controversy with no intent to pay for the same; that the sale was induced by statements which were false and misleading; that the complainant was thereby deceived, and induced to part with his broom corn; and that immediately after the discovery of the fraud the complainant elected to rescind the contract of sale and reclaim the property sold, and that

he took the proper steps in that behalf. These allegations and the relief prayed for give an unmistakable character to the proceeding, and stamp it as a proceeding to recover property which was wrongfully obtained from the complainant by fraud, and which, for that reason, must be regarded as having been held originally by the broom company, the fraudulent vendee, in trust for the complainant, if he elected to rescind the contract of sale. It must also be regarded as held in trust by the other defendants, to whom the property was transferred, unless they were innocent purchasers for value. It is true that there are some allegations in the bill, not stated above, showing that one of the stockholders of the broom company (I. J. Ringolsky) has not paid for his stock, and that he has received money from the broom company, which he ought to refund. It is also true that allegations of this sort have no proper place in a proceeding such as we understand the present proceeding to be, and that they might, under some conditions, render the bill multifarious; but as the bill was dismissed as to Ringolsky, and as no attention was paid to these allegations, or relief sought or granted on account thereof, they ought not, at this stage of the case, to be noticed, or to prejudicially affect the decree, if it is right in other respects. The appellants have sustained no injury in consequence of these allegations, and cannot be heard to complain that the bill is multifarious.

Nor is the contention of the appellants entitled to any weight that the decree is erroneous, and that the demurrer to the bill should have been sustained, because the complainant was not, as it is said, "a judgment or lien creditor" of the broom company when he filed his bill. It is a sufficient answer to this contention that the proceeding is in no sense, or from any point of view, a creditors' bill to reach equitable assets of a debtor, to which class of cases the doctrine invoked by the appellants is applicable. This is a proceeding by the complainant, as before stated, to establish a constructive trust, and compel the trustee to restore the trust property to its rightful owner, or to account for the proceeds if the property, or a part thereof, has been sold. In such cases it is no more necessary for a complainant to establish his demand at law before proceeding in equity than when a beneficiary under an express trust seeks relief against his trustee. Lawton v. Levy, 2 Edw. Ch. 197; Kerr v. Blodgett, 48 N. Y. 62; Weir v. Tannehill, 2 Yerg. 57; Bank v. Houchens, 115 Fed. 96 (decided by this court at the present term). Moreover, in the case in hand, the complainant could not have established a demand at law against the broom company, as by suing for the value of the broom corn, without ratifying the sale and relinquishing the very right to the property which he seeks by this proceeding to enforce.

Another contention on the part of the appellants, which is entitled to more consideration, perhaps, than the one last mentioned, is that an action at law by way of replevin would have furnished an adequate remedy for the wrong complained of, since the property involved was personalty; and hence that a court of equity was without jurisdiction. With reference to this contention we observe that, while a vendor of personal property may maintain replevin against a vendee, who, as in this case, bought the property with a preconceived intent not to pay

for the same (Bussing v. Rice, 2 Cush. 48; Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754; Beebe v. Hatfield, 67 Mo. App. 609; Morrow Shoe Mfg. Co. v. New England Shoe Co., 6 C. C. A. 508, 57 Fed. 685), yet it does not follow that in every case a vendor who elects to rescind and reclaim his goods from one who has bought them not intending to pay therefor, must resort to replevin, and cannot have relief in equity. Serious obstacles may stand in the way of obtaining adequate redress at law. Besides, the fact that the fraudulent vendee, when the election to rescind is made, occupies the position of a trustee, should dispose a court of chancery to assume jurisdiction, on the ground of declaring and enforcing the trust, unless the transaction is a very simple one, which can be investigated readily by a court of law and tried to a jury. In the case before us the bill alleged that such part of the broom corn as had not been worked up into brooms had been mingled by the broom company with other broom corn, which, as a matter of course, rendered it difficult of identification. It was also disclosed by the bill that the property had been twice sold, and that the rights of the alleged purchasers would be a subject-matter for careful investigation. It was also charged in the bill that a part of the commodity had been manufactured into brooms, and consigned to third persons, who were acting in collusion with the broom company, and who were chargeable, as fraudulent trustees, with the property, or the proceeds thereof, which they had received. It was obvious, therefore, that the complainant could not obtain complete relief by a single action in replevin, such as he could obtain by the more flexible processes of a court of equity. These considerations were ample, in our judgment, to warrant a court of equity in entertaining the bill for the purpose of investigating the entire transaction, and enabling the complainant to obtain full relief by a single action. The case was one which fell within the province of a court of chancery, because the object was to establish and enforce a trust, and because the legal remedy was inadequate. Refining Co. v. Fancher, 145 N. Y. 552, 556, 557, 40 N. E. 206, 27 L. R. A. 757. See, also, Morse v. Nicholson, 55 N. J. Eq. 705, 38 Atl. 178.

Turning to other phases of the controversy, the appellants claim that they, or at least some of them, are armed with the rights of innocent purchasers for value, notwithstanding the fraud that was perpetrated by the broom company. This claim seems to be based entirely on the fact that the deed of trust which was executed in favor of the Exchange Bank of Jefferson City and David Loewen on September 28, 1897, granted to the broom company a definite extension of time for the payment of the debts which were thereby secured, and the argument is that such extension was a present valuable consideration paid by the beneficiaries in the deed of trust for the conveyance, which will enable them to hold the property as against the complainant, because the beneficiaries were not cognizant of the fraud that had been perpetrated by the broom company. It is conceded that the deed of trust was given to secure antecedent debts, and that the Missouri doctrine, as well as the doctrine of some other states, is that one who takes a mortgage or deed of trust on property simply as security for an antecedent debt, without paying any new or additional consideration, is not

a bona fide purchaser who can hold the property if it transpires that his vendor acquired the same fraudulently. Goodman v. Simonds, 19 Mo. 107; Wine Co. v. Rinehart, 42 Mo. App. 171, and cases there cited; Vogelsang's Adm'r v. Fisher, 128 Mo. 386, 405, 31 S. W. 13; 2 Pom. Eq. Jur. (2d Ed.) § 749. While the deed of trust now in question does contain a clause extending the time of payment of the debts thereby secured for 10 days, yet this clause was immediately followed by another, which authorized the trustee to take possession of the mortgaged property "at once," inventory it, and sell it forthwith, either at public or private sale, in bulk or at retail. The trustee was further empowered to hold the proceeds of the sale until the debts, as extended, matured, and then to apply the proceeds to their payment. We are of opinion that a deed of trust or mortgage containing such provisions as these cannot be regarded as granting a debtor any indulgence, unless we ignore matters of substance, and look merely at the shadow. The debtor was deprived immediately of all of his property and resources of whatsoever character, which were to be sold forthwith at a forced sale; and before such a sale as the one contemplated in the present instance could have been consummated the indebtedness, as extended, would doubtless have become payable. The debtor derived, therefore, no possible advantage from the clause granting an extension, which was merely colorable, and, as we have been forced to conclude, was in fact inserted in the deed of trust for no other purpose than to furnish a pretext for such a claim as has been made, namely, that such extension of the time of payment was a new and additional consideration for the conveyance, such as protects the creditor and arms him with the rights of an innocent purchaser for value. Instead of having the effect intended, it really creates a grave suspicion that the creditor either knew or suspected that the broom company could not transfer a good title to some of the property in its possession which it offered to pledge as security for its debts. Edson v. Hudson, 83 Mich. 450, 47 N. W. 347. See, also, Victoria Paper Mill Co. v. New York & P. Co. (City Ct. N. Y.) 57 N. Y. Supp. 397. The result is that the plea by the appellants that they were innocent purchasers for value was properly overruled, and, as no sufficient reasons are shown for disturbing the finding of the lower court that the broom company bought the broom corn in controversy with no intent to pay for it, it follows that the beneficiaries in the deed of trust have no greater right thereto than the broom company would have, if it was the sole defendant.

Another contention on the part of the appellants—and the only one which we deem it necessary to notice—is that the lower court should have allowed the complainant only $30 per ton for his broom corn, instead of $50 per ton, which was the sum actually awarded. This claim seems to be made upon the theory that the complainant sued the broom company for the purchase price of the commodity sold, or in trover for its conversion; in which event, it is said, the purchase price was the true measure of recovery. But the theory on which this claim is based is erroneous. The complainant sued to recover his property from the fraudulent vendee upon the theory that he was chargeable with it as a trustee. Pending the action, and for convenience, the purchasers from the fraudulent vendee were allowed to sell or dispose

of the property as they deemed best, holding the proceeds to await the outcome of the suit. In the meantime the value of the commodity rose, and it was sold at a large advance above the purchase price. For these reasons we entertain no doubt that the complainant was entitled to recover the value of his broom corn at the time the final decree was entered, and such seems to have been the opinion of the lower court.

Finding no material error in the proceedings below, the decree from which the appeal was taken must be affirmed, and it is so ordered.