## TOOTHAKER V. CITY OF BOULDER.

1. ACTIONS ON BONDS ISSUED IN AID OF PUBLIC IMPROVEMENTS.— An action may be maintained upon municipal bonds, issued in aid of a public improvement, where the obligation to pay is unconditional, notwithstanding they are issued by virtue of the act of January 10, 1868 (R. S. 185).

2. OBJECTIONS TO COMPLAINTS — CLASSIFICATION OF.— It is clearly a misnomer to classify the objection that a complaint does not state

facts sufficient to constitute a cause of action as an objection against the jurisdiction of the court.

3. STATUTE OF LIMITATIONS — HOW TO DETERMINE ITS APPLICATION.— As distinct forms of civil actions have been abolished by the code, we must, in order to determine the application of the statute of limitations in a given case, consider the nature of the cause of the action, and, in some instances, its appropriate form under our former practice.

4. SAME — APPLIES TO SPECIALTIES.— The six-year statute of limitations of this state applies to specialties in action as well as to simple contracts.

5. STATUTE INTERPOSED TO ACTION ON SEALED INSTRUMENT — SUBSEQUENT PROMISE NOT UNDER SEAL.— In a civil action upon a bond under seal for the direct and unconditional payment of money, the recovery must be had, if at all, upon the obligation or agreement to pay contained in the instrument itself, and cannot be had on any subsequent promise or contract of less solemnity. Hence, if to such an action the defense *non accrevit infra sex annos* be interposed, it cannot be overcome by a new promise, acknowledgment or part payment, as in like actions upon simple contracts.

*Error to Boulder County Court.*

Mr. S. A. GIFFIN, for plaintiff in error.

Mr. S. H. BALLARD, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The admitted facts and uncontradicted evidence in this case are in substance as follows: On March 1, 1872, the town of Boulder, Colorado, which in 1881 became a city of the second class, and is the defendant in this action, issued certain bonds in aid of the Boulder Valley Railway Company. The following is a copy of one of said bonds upon which this action was brought:

"$500.     UNITED STATES OF AMERICA.     No. 3.

"*Territory of Colorado, County of Boulder.*

{ 25-cent stamp }                    { Seal }
{ U. S. Revenue. }                   { of State. }

"BOULDER TOWN BOND.

"Know all men by these presents, that the town of Boulder, in the county of Boulder and territory of Colo-

rado, is indebted to and promises to pay to the treasurer of the Denver & Boulder Valley Railway and Telegraph Extension Company, or bearer, the sum of five hundred dollars, payable on the 1st day of January, 1877, at the office of the treasurer of said town of Boulder, in said town of Boulder, with interest at the rate of eight per cent. per annum, payable annually on the 1st day of January, on presentation of the proper coupons hereto annexed; the last year's interest payable with bond at maturity.

" This bond, with others of the same issue added, make the sum of ten thousand dollars, which the trustees of said town, by their president, are authorized to issue in aid of said Railway and Telegraph Extension Company, by virtue of an act of the legislative assembly of the territory of Colorado, approved January 10, 1868, and under the provisions of an act entitled ' An act to legalize and make valid the special election held in the town of Boulder, and to authorize the president of the board of trustees to issue certain bonds thereunder,' approved January 16, 1872.

"In testimony whereof, and in accordance with said acts, the town of Boulder hereby pledges its full faith, credit and property for the punctual payment of this bond and the interest thereon as aforesaid, and has authorized the same to be executed by the president and clerk of the board of trustees of said town, as witness their hands and the seal of said town, executed at the said town of Boulder, in the county of Boulder and territory of Colorado, this 1st day of March, 1872.

"[Seal of Town of Boulder.]   F. A. SQUIRES, President Board of Trustees.

" W. C. WYNCOOP, Clerk Board of Trustees."

There were attached to said bond when issued four coupons for the annual interest; coupon No. 1 being for the interest due January 1, 1873. Coupon No. 2 reads as follows: " The town of Boulder, county of Boulder, ter-

ritory of Colorado, will pay to the bearer $40, at the office of the treasurer of the town of Boulder, in the town of Boulder, in said county and territory, on the 1st day of January, 1874, being twelve months' interest on bond No. 3.          W. C. WYNCOOP, Town Clerk."

Coupons Nos. 3 and 4 were the same, except that No. 3 was payable January 1, 1875, and No. 4 was payable January 1, 1876. There was no coupon for the last year's interest, the same being payable at the maturity of the bond, January 1, 1877.

It appears from the records of the town of Boulder that on September 6, 1880, coupon No. 2 of said bond No. 3, being presented to the board, was ordered to be paid to the lawful holder thereof, who was in no way connected with or acting for the plaintiff, and it is admitted that coupons Nos. 1 and 2 of said bond were accordingly so paid.

According to plaintiff's testimony, she became the owner of bond No. 3, with all the coupons attached except Nos. 1 and 2, in January, 1879, as a gift from her husband in his last sickness. Her husband acquired said bond and coupons Nos. 3 and 4 in a trade in Denver. Coupons Nos. 1 and 2 never belonged to plaintiff, but were cut off by the former owners of bond No. 3, and put into circulation as commercial paper. Plaintiff never sold or parted with her interest in the bond, or the coupons which were attached when she got it, nor were the same, or any part thereof, ever paid to her; but the same have been lost or stolen, she having made diligent but unavailing search therefor in all places where she was in the habit of keeping such papers, and in 1880 she served on the town board a notice of her loss of the bond, and told them not to pay to any one else, and she has several times since notified defendant of her loss and demanded payment.

The execution and delivery of the bond by the duly-authorized municipal officers of the town of Boulder is

not denied; and that the town of Boulder became a city of the second class, known as the "City of Boulder," prior to the institution of this action, is expressly admitted.

It was objected on behalf of defendant by motion after pleading, and before the trial, that the county court had no jurisdiction over the subject-matter of the action or over the person of the defendant. It is argued by counsel that the complaint does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, inasmuch as the bond is payable through the agency of the territorial or state officials, as provided by the act of January 10, 1868 (R. S. 135), and not by the municipality issuing the same; that the presumption is that the money is in the state treasury to pay the same; and that the remedy of plaintiff in case of non-payment, if any she has, is by *mandamus* against some state officer or officers, or by suit for the penalty prescribed by said act.

In our judgment none of these objections are well taken. The complaint and summons having been duly served on defendant in a civil action for a money demand not exceeding $2,000, as the complaint expressly states, and the defendant having appeared and filed its answer, it is difficult to conceive how it can be maintained that the county court was without jurisdiction in the premises. To the objection that the county court did not have jurisdiction of *mandamus* proceedings it is a sufficient answer to say that this is not a proceeding by *mandamus*. Again, conceding that the complaint does not state facts sufficient to constitute a cause of action, and that objection for such causes may be raised at any time, it is clearly a misnomer in cases of this kind to classify such an objection as one against the jurisdiction of the court. If defendant's counsel are of opinion in any case that the complaint does not state facts sufficient to constitute a cause of action, they may demur, or raise the question in any appropriate way at any time, and the court may cor-

rectly sustain the objection; still, it does not necessarily follow that the court is thereby ousted of its jurisdiction, for the complaint may be amended so as to be sufficient; or, even if that cannot be done, still the court may have jurisdiction of the subject-matter as well as of the parties, and in such case may render a valid judgment dismissing the action.

The cause being tried to the court without a jury, the finding and judgment were in favor of defendant, and plaintiff brings the case to this court on writ of error.

The defendant relied at the trial on the special defense that the cause of action did not accrue at any time within six years before the commencement of the action. The plaintiff relied upon the payment of coupons Nos. 1 and 2 in September, 1880, to overcome the bar of the statute. The views of the court upon the law applicable to the evidence are not preserved in the record; but this occasions no embarrassment, considering that the evidence is without conflict, and of such a character that different conclusions of fact cannot reasonably be drawn therefrom. So we have only to consider the legal conclusion which follows from the evidence, under the statute of limitations of this state. The statute provides, *inter alia*, as follows:

"The following actions shall be commenced within six years after the cause of action shall accrue, and not afterwards: *First.* All actions of debt founded upon any contract or liability in action. *Fourth.* All actions of *assumpsit,* or on the case founded on any contract or liability, express or implied."

It will be observed that by the terms of the statute its application was made to depend somewhat upon the form of the action. As distinct forms of civil actions have been abolished in this state by the adoption of the Code of Civil Procedure, we must now, in order to determine the application of the statute in a given case, consider the nature of the cause of the action, and, in

some instances, its appropriate. form, according to our former practice. Wood, Lim. § 39; *De Haven v. Bartholomew*, 57 Pa. St. 129; *Buckingham v. Orr*, 6 Colo. 587.

The bond upon which this action is brought, being under seal, is a specialty, and so, also, are the two coupons attached thereto, and not mere simple contracts. *City of Kenosha v. Lamson*, 9 Wall. 477; *City of Lexington v. Butler*, 14 Wall. 282; *Clark v. Iowa City*, 20 Wall. 583.

Our six-year statute of limitations applies to specialties in action as well as to simple contracts. In this respect it is unlike the statute of 21 James I., and of many of the American states, which contain the words "without specialty" or "not under seal." Hence the defense *non accrevit infra sex annos* was well pleaded.

Under our former practice the form of the action upon the plaintiff's bond and coupons must have been debt. *Assumpsit* or trespass upon the case upon promises could not be maintained upon a sealed instrument, though it was maintainable for the breach of simple contracts, express or implied. The decided weight of authority is to the effect that, where the statute of limitations is pleaded in bar to an action of debt upon a specialty, a replication of a new promise within the statutory period is not available to overcome the bar, though the rule is otherwise in *assumpsit* or in actions upon simple contracts. Ang. Lim. § 209; Wood, Lim. §§ 64–68; *Hittson v. Davenport*, 3 Colo. 597; *Buckingham v. Orr, supra*.

The reasons for the distinction, though not altogether satisfactory to our modern ideas, are not difficult to understand. The statute of 21 James I., from the time of its adoption, was very odious, to the English courts. They regarded it as obnoxious to the moral sense that a delinquent debtor should take advantage of an indulgent creditor, and deprive him of his simple contract debt altogether, on the sole ground of his generous forbearance for a term of six years. As the creditor had twenty

years in which to bring his action on a specialty, the hardship did not appear so great. So, too, in actions *ex delicto*, it did not seem so unreasonable to require the party thinking himself aggrieved to be more diligent in seeking relief by suit. Hence in such actions, the statute, when pleaded, was uniformly enforced for the protection of defendants according to its letter and spirit. But in actions of *assumpsit*, from the earliest period, the construction of the statute was uniformly unfavorable to the debtor, and correspondingly favorable to the creditor. In addition to disregarding the statute altogether, unless it was specially pleaded, it was held that, inasmuch as the defendant's promise to pay, express or implied, was of the gist of the action, therefore any promise within the statutory period might be assumed to be the promise sued on; and hence that a new promise within such period was a sufficient replication to the plea of the statute, and that such new promise was in support of, and not a departure from, the declaration. It was further held that, as the law implies a promise to pay when an indebtedness is acknowledged to be due by the debtor, such acknowledgment, without any express promise, was evidence in support of the replication of a new promise; and, still further, that part payment on account of an indebtedness was evidence of an acknowledgment of the debt. Hence it resulted that part payment showed an acknowledgment; the acknowledgment proved a new promise; the new promise sustained the replication; and the replication supported the declaration; and so the creditor was saved from the operation of the statute, and recovered his debt.

Notwithstanding the ingenuity, subtlety and refinement thus employed to overcome what was supposed to be the harshness of the statute, and to give effect to its equity, it must be admitted that there was much sound reason and justice in the conclusion.

By modern decisions, both in England and in this

country, the statute of limitations has been more favorably regarded. Instead of being supposed to rest on the presumption of payment, as in earlier times, it is considered as a statute of repose, intended to make parties more vigilant in asserting their supposed rights, and to deter them from bringing actions on stale claims when witnesses may have died or moved away, or their recollection become impaired, or when other evidences may have disappeared, so that the truth of matters in controversy might be difficult of ascertainment. The generally accepted doctrine at the present time, in the absence of special legislation, is to the effect that, while a new promise will overcome the plea of the statute in actions on simple contracts, the promise, if express, must be positive and unequivocal, or, if upon a condition or a contingency, the condition must be shown to have been performed, or the contingency to have happened. If an implied promise, to be inferred from an acknowledgment or from part payment, be relied on, the acknowledgment or part payment must be shown to have been voluntary, unconditional, by the proper person, to the proper person, and under circumstances consistent with an intention and promise on the part of the debtor to pay the particular debt so acknowledged or the residue thereof. Wood, Lim. §§ 4, 5; Ang. Lim. § 211 *et seq.*; *A'Court v. Cross,* 3 Bing. 329; *Bell v. Morrison,* 1 Pet. 351; *Berghaus v. Calhoun,* 6 Watts, 219; *Willoughby v. George,* 5 Colo. 80; *Buckingham v. Orr, supra; Richardson v. Bricker,* 7 Colo. 58; *Morrell v. Ferrier,* 7 Colo. 22.

It will readily be seen that the course of reasoning by which actions of *assumpsit* are sometimes saved from the operation of the statute of limitations is not applicable to actions of debt upon specialties. In actions of the latter class the declaration is directly upon the obligation or agreement to pay contained in the instrument sued on, and not upon any promise, express or implied, resulting from an indebtedness upon simple contract.

Hence, when a specialty is relied on as the cause of the action, the recovery must be had, if at all, upon the obligation or agreement to pay contained in the instrument itself, and cannot be had upon any subsequent promise or contract of less solemnity; for there cannot be a contract under seal and a simple contract between the same parties for the payment of the same debt, subsisting at the same time, the latter being merged in the former. 1 Chit. Pl. 115; Ang. Lim. § 209 *et seq.*; Wood, Lim. § 66 *et seq.*; *Leonard v. Hughlett*, 41 Md. 380; *Hittson v. Davenport, supra*, and the cases there cited.

There are some cases holding a doctrine somewhat different from the foregoing, to the effect that, while no action can be maintained upon the sealed instrument itself where the bar of the statute has attached, still, if within the statutory period there be an express promise to pay, an action of *assumpsit* may be maintained upon such promise. This is well enough where there is a new consideration for the new promise. There are still other cases to the effect that an acknowledgment or a part payment is sufficient to remove or suspend the statute. But such cases are not sustained by the weight of authority, nor upon principle; and we do not feel inclined to follow them, nor extend the exceptions to a statute the operation of which we consider most salutary in a large majority of cases.

According to the view we have taken of the case, it is unnecessary to consider whether the payment of coupons Nos. 1 and 2, detached as they were, and belonging to, and presented by, a party in no way representing the plaintiff, was such a part payment as would, under any view of the law, remove the bar of the statute as to the remaining bond and coupons. The plaintiff, according to her own testimony, came into possession of the bond and coupons attached in January, 1879, two years after the maturity of the bond itself. She notified defendant in 1880 that she was the owner of the bond, but did not

bring suit until December, 1885, the bond being then overdue nearly nine years. Under such circumstances, the statute of limitations being pleaded and relied on by defendant, the county court did not err in holding that the plaintiff was not legally entitled to recover, and the judgment is accordingly affirmed.

*Affirmed.*