[No. 1895.]
NICHOLLS v. McSHANE ET AL.

1. CHATTEL MORTGAGES—SALES—RESCISSION—FRAUD—ATTACHMENT.
Where a vendee procures goods from a vendor through fraudulent representations and under such circumstances that the vendor may rescind the sale, the vendor by promptly rescinding the sale may maintain an action of replevin for the goods against a subsequent mortgagee who took the goods to secure a preëxisting debt without showing that the mortgagee had knowledge of the fraud of the vendee. But if the vendor elects not to rescind the sale and proceeds by attachment of the goods in the hands of the mortgagee, he must show that the mortgagee had actual notice or knowledge of the fraudulent intent of the vendee. Constructive notice is insufficient, but knowledge of circumstances may be equivalent to actual notice.

2. PRACTICE—TRIAL—NONSUIT OR DIRECTING VERDICT.
If he upon whom the burden of proof rests, falls short in any essential particular, or if any element of proof necessary to make out his case is wanting, upon motion of the defendant it is the duty of the court to enter a judgment of nonsuit and in a proper case, even to render final judgment for the defendant upon the merits. But to sustain such a motion, the court, looking at the evidence in the most favorable light for the plaintiff in which the jury would be at liberty to view it, must be able to say that there is no evidence which would justify a verdict for him, or such a clear and decided preponder-

ance of evidence against him as would require the court to set aside a verdict in his favor.

3. FRAUD AND DECEIT — EVIDENCE — STATEMENTS TO COMMERCIAL AGENCIES.

Upon the issue as to whether or not a sale of goods was procured through fraud and false representations of the vendee, statements made by the purchaser to a commercial agency are admissible in evidence, if made sufficiently near the time of the transaction in question to have any connection with or bearing upon it, provided it be shown that the statements were brought to the knowledge of the vendor and were relied upon by him in making the sale and extending the credit.

4. CHATTEL MORTGAGES—FRAUD AND DECEIT—NOTICE.

Where a merchant mortgaged his stock of goods to the vice president of a bank to secure an indebtedness to the bank and made a second chattel mortgage to the same party to secure other creditors not connected with the bank, conceding that notice to the cashier of the bank that the merchant procured the goods through fraud was notice to the bank, such notice could not affect the creditors secured by the second chattel mortgage.

5. SAME.

Where a merchant purchased goods through fraud and afterwards mortgaged his stock of goods to secure an indebtedness to a bank, evidence that an attorney for creditors of the merchant called at the bank on two occasions and inquired about the financial condition of the merchant and was told by the cashier that he was financially sound and that the attorney could assure his correspondents that there was no risk in shipping him all the goods he might order, and the second time the attorney called he told the cashier that he thought the merchant was preparing for a failure and was getting in a large stock of goods for the purpose of defrauding his creditors, and the next day after this last interview the chattel mortgage was executed to the bank, was not sufficient to show that the bank had notice or knowledge of the fraud of the merchant in procuring the goods.

6. FRAUD AND DECEIT—STATUTORY CONSTRUCTION.

The act of 1897 (Session Laws, 1897, page 262) making it a misdemeanor for one who purchases goods upon credit, and before paying therefor, to sell, hypothecate, pledge or otherwise dispose of the same out of the usual course of business, and with intent to cheat or defraud the vendor, was not intended to have any effect in the determination of the validity or invalidity of any contract of sale, and does not prevent the preferance of a *bona fide* creditor having no notice of the fraudulent intent of the debtor.

7. CHATTEL MORTGAGES—ATTACHMENT—BURDEN OF PROOF.

Where goods are attached in the hands of a chattel mortgagee, on the

ground that the chattel mortgage was made to defraud creditors, the burden of proof is upon the attachment creditors to show the fraudulent intent of the chattel mortgagor and the participation in, or knowledge of, such fraud by the chattel mortgagee, before the latter is called upon to defend his title.

*Appeal from the District Court of Gilpin County.*

Messrs. Rogers, Cuthbert & Ellis, Messrs. Bicksler & McLean and Messrs. Hurlburt & Hicks, for appellant.

Mr. C. C. Brown and Messrs. Robinson & Anfenger, for appellees.

Wilson, J.

This is a contest between attachment and mortgage creditors. A. Rachofsky, a merchant in Central City, was indebted to the First National Bank of that city, and the bank demanding security, he executed to plaintiff McShane for this purpose a chattel mortgage upon the stock of goods in his store. McShane was vice president and a director of the bank, and the evidences of indebtedness held by it against Rachofsky being first assigned to him by the bank, Rachofsky executed a new note for the total amount thereof, being $8,263, payable directly to McShane one day after date, and to secure this the chattel mortgage was given. On the next day Rachofsky, of his own motion, executed and delivered to McShane as trustee a second mortgage, subject to the first but upon the same stock of goods, to secure an alleged indebtedness by him to various other creditors, in the amount of about $13,500. McShane took possession of the entire stock under the mortgages. Within a few days thereafter, various other creditors of Rachofsky, holding claims unsecured to the amount of about $15,000, instituted suits thereon by attachment, and under the writs issued therein, defendant Nicholls, the sheriff of the county, took the entire stock of goods from the custody and possession of Mc-

Shane.   Thereupon, McShane and the parties named in the second chattel mortgage, for whom he was trustee, instituted this suit in replevin for the recovery of the goods.   The answer set up as a defense that the claims of the attachment creditors were for goods sold to defendant Rachofsky under false and fraudulent representations by which the sale was fraudulent; that the two chattel mortgages were executed with the intent on the part of Rachofsky to hinder, delay and defraud his creditors; that the mortgagees had knowledge, either actual or constructive, that the purchase by Rachofsky from the attachment creditors was fraudulent, and also that he executed the chattel mortgages with the intent to hinder, delay and defraud his creditors, and that they participated in said fraud.   The allegations in detail are quite lengthy, but we believe this to be a sufficient statement of them to understand the points at issue.   Upon the trial, after the evidence had been concluded, the court, upon motion of plaintiffs, instructed the jury to return a verdict in their favor, which was done, and judgment entered accordingly.

1. This court recently passed upon one of the questions which is material in this case, and our decision then made is strongly relied upon by defendant, in connection with a recent decision of the United States supreme court, to secure a reversal of this judgment.   *Reid, Murdoch & Co. v. Bird*, 15 Colo. App. 116; 61 Pac. Rep. 353; *Browning v. DeFord*, 20 Sup. Ct. Rep. 877.   A consideration of the questions involved and determined in these two cases will settle the most difficult question in this case, and the one which will in fact determine the appeal.   The *Bird* case in this court was one wherein the creditor elected to rescind the sale, and sought to recover in replevin the identical goods which he had sold to the debtor, from a mortgagee, who had taken possession of and held them under a mortgage to secure other creditors.   It was there held by this court in effect that where the vendor of goods had a right to rescind the sale for fraud of the purchaser, and acted promptly in the exercise of such right, a creditor of the purchaser by taking a chattel

mortgage on the goods to secure a preëxisting debt, did not become a purchaser for value, and acquired no title, as against the seller so seeking to rescind, to the goods sold by him and sought to be recovered in replevin. Under this decision, it would not be necessary in order to sustain a recovery by the vendor in such case that it must first be shown that the mortgagee had notice or knowledge of the fraud on the part of the purchaser. This is upon the principle that the original purchaser never acquired any title, this being defeated by his fraud. The mortgagee was held not entitled to the rights and privileges of an innocent purchaser for value, because he had simply taken his mortgage upon the goods as security additional to the security which he already had for a debt existing at the time the fraudulent purchase was made. He had given no new or additional consideration, and had parted with nothing on the faith of the apparent and pretended ownership of the goods secured by the fraudulent purchase. He could not therefore acquire by the mortgage even an equitable claim to a lien upon any property to which the mortgagor had no title, even though embraced in the mortgage. He would not be in the position of an actual purchaser, who without notice or knowledge of any fraud, and relying upon the possession and apparent ownership of his vendor, had paid a *bona fide* valuable consideration and received a transfer of the goods.

*Browning* v. *De Ford* was a case wherein the vendor of the goods, under circumstances which gave him the right to rescind the sale, elected however not to do so, but to sue in attachment for the value of the goods. The contention of the mortgagees in that case was, that by suing for the purchase money and attaching the goods as the property of the mortgagor, the defendants confirmed the sale, and that hence the mortgage was valid, notwithstanding knowledge of the mortgagees that the goods had been fraudulently purchased. The court held that the contention was not sound, and that in such case it made no difference as to the rights of the mortgagee whether the action was in replevin or assumpsit.

If defrauded creditors pursued the latter course, the mortgagees under such contention, knowing that the goods were fraudulently purchased, stood in the position of seeking to take advantage themselves of the debtor's fraud, and to obtain a preference to which they were not justly nor equitably entitled. In that case, the creditors seeking the remedy by attachment rather than in replevin, knowledge by the mortgagees of the fraud on the part of the purchaser of the goods was essential to a recovery by the attaching creditors, thus differing from the case where the vendor rescinded the sale and sought to recover in replevin the identical goods which had been secured from him by fraud, as was the case in *Reid, Murdoch & Co. v. Bird*, in this court. The reason for the difference in principle seems to us apparent. The vendor in the latter case sought to recover only the goods which had been obtained from him by fraud, and which he was able to identify, and such recovery did not place the mortgagee in any worse position than he was at the time that his debt was created. It prevented, and rightfully so, one creditor from securing an undue preference over another through the instrumentality of fraud perpetrated by the purchaser from the one, and the mortgagor to the other. In the case where the creditor elects to confirm the sale as between him and the vendee, and seeks by suit in attachment to recover the purchase money, he might, if the same principle controlled as in the other case, obtain an undue advantage and preference over the mortgage creditor, because his debt would be first satisfied out of the entire property of the vendee, without regard to that which had been sold by him. It is a reasonable and sound rule, therefore, that this he should not be allowed to do, unless it be first shown that the mortgagee had knowledge of, or participated in, the fraud of his mortgagor. This is expressly declared to be the rule in the *De Ford* case. The court said in its opinion, "To make out their case, the attaching creditors were bound to show, first, that the goods were fraudulently purchased; and second, that the mortgagees, or Vance, their agent, was a party to, or cogni-

zant of, such frauds." Before the attaching creditors could make out a case entitling them to the relief sought, the court held it to be first necessary for them not only to show that the debts due to them had been fraudulently contracted, but also to go further and show that the mortgage was fraudulent, and then prove that they had a title superior to the mortgage creditors, in which event only they would be entitled to recover. This, the court said, " might be done by evidence that the mortgage was taken in pursuance of a scheme to defraud the general creditors, or that the mortgagees took their security with the knowledge that it covered goods which had been purchased upon fraudulent representations, and that the purchases were made under such circumstances as would entitle the vendors to rescind the sale and reclaim the goods." In other words, to defeat the mortgage, they must substantially make out the same character of case as would have been required of them in order to have defeated a fraudulent assignment or transfer of the goods; and the rule as to the proofs necessary in such case is well settled in this jurisdiction. It is, that in addition to showing the fraud or fraudulent intent of the grantor, the party seeking to invalidate the transfer must show by satisfactory evidence knowledge of or collusion with the intended fraud by the grantee. *Smith v. Jensen,* 13 Colo. 219 ; *Bank v. Hummel,* 11 Colo. App. 337 ; *Seeleman v. Hoagland,* 19 Colo. 235. The grantee must be shown to have been cognizant of the fraudulent intent of the grantor. *Grimes v. Hill,* 15 Colo. 363. Constructive notice is insufficient, but knowledge of circumstances may be equivalent to actual notice. There must, however, be actual notice or knowledge of such equivalent circumstances. *Riethmann v. Godsman,* 23 Colo. 208. The same burden of proof was upon the defendant in this case to sustain his defense.

2. The question now before us is whether under these settled rules of law applicable to the case, the defendant made out his case, or made it out sufficiently to require its submission to the jury. If so, the court erred in directing a verdict.

Repeated adjudications of this and of the supreme court have affirmed the rule announced by Chief Justice Thatcher, that "If he upon whom the burden of proof rests, falls short in any essential particular; if any element of proof necessary to make out his case is wanting, upon motion of the defendant, it is the duty of the court to enter a judgment of nonsuit,—in a proper case, even to render final judgment for the defendant upon the merits." *Tripp v. Fiske*, 4 Colo. 24. It is also true, however, as contended by the defendant, that to sustain such a motion, the court, looking at the evidence in the most favorable light for the plaintiff in which the jury would be at liberty to view it, must be able to say, there is no evidence which would justify a verdict for him, or such a clear and decided preponderance of evidence against him as would require the court to set aside a verdict in his favor. *Schwenke v. Union D. & R. Co.*, 12 Colo. 341; *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390; *McQuown v. Thompson*, 5 Colo. App. 466.

3. On the trial, the defendant offered evidence tending to show that shortly prior to the sales of the goods by the attaching creditors, Rachofsky made to the commercial agency of R. G. Dun & Company a statement of his financial condition, showing his assets and liabilities, which statement they alleged and averred a purpose to show, was false, and further offered evidence of the vendors to the effect that in making the sales and extending the credit, they relied upon the reports of the commercial agency, which were based upon this personal statement to it by Rachofsky. All of this evidence was excluded by the court, as was also certain other evidence tending to prove fraud in the original purchase by Rachofsky. In excluding some, at least, of this offered evidence, we believe the court clearly erred. As to what particular portion, it is not necessary for us, for reasons apparent hereafter, to specially designate. We shall only say, generally, that it is almost impossible to prove fraud by positive and direct testimony. Such proof usually consists of a variety of circumstances, each insufficient of itself, but when connected to-

gether, possibly forming a chain which is complete. As a part of this proof, in cases like that at bar, the statements made by the merchant to a commercial agency are admissible in evidence, provided that they be made sufficiently near the time of the transaction in question to have any connection with or bearing upon it; and this must be determined by the court upon the circumstances of each particular case; and provided also it be shown that these statements were brought to the knowledge of the vendor, and were by him relied upon in making the sale in controversy and in extending credit to the purchaser. *Reid, Murdoch & Co. v. Bird, supra.* Whether, however, the error of the court in this respect would justify a reversal of this judgment, depends upon another question.

4. All of the excluded testimony to which we have referred was to support the charge that the purchase by Rachofsky was fraudulent. This might have been fully shown, but if the defendant failed to show also that the plaintiffs had knowledge or sufficient notice of such fraud, they would not have been entitled to recover judgment, and the judgment rendered herein must stand. The only proof introduced or tendered, to show knowledge by the mortgagees of the alleged fraudulent purchase by Rachofsky, or of any participation by them in any fraud intended or attempted by Rachofsky, was that contained in an affidavit by counsel for defendants, setting forth what they expected to prove by an absent witness, George F. Blair, and which, to avoid a continuance, was received in evidence upon the admission by counsel for plaintiffs that Blair would testify to such statements if present. These statements, so far as they bear upon this question of knowledge by the mortgagees, were substantially to the effect that sometime between June and October, previous to the execution of the chattel mortgages,—the exact date, however, not being given,—Blair, who was an attorney, called at the First National Bank of Central City, and stated to the cashier that he was receiving numerous inquiries in regard to the financial condition of Rachofsky, and was satisfied

from these inquiries that Rachofsky was buying heavily on credit in the east, and inquired what he knew of said financial condition, and whether it was safe for the parties making these inquiries to ship their goods; that the cashier replied he was fully informed as to the condition of Rachosky, as he did all of his banking business with them, and they knew him to be financially sound; and that he could assure his correspondents that there was no risk in shipping to Rachofsky any goods he might order; that on the day previous to the execution of the mortgage to McShane, Blair received further telegraphic inquiries from the east in regard to Rachofsky's financial condition, whereupon he again had an interview with the cashier, who informed him that Rachofsky was financially good, etc.; and that Blair told the cashier in this interview that in his judgment Rachofsky was preparing for a failure, and was, he thought, getting in a large stock of goods for the purpose of defrauding his creditors; that the cashier said to him that he knew personally that Rachofsky was in better financial condition at that time than he had ever been.    Conceding, as contended, that notice to the cashier was notice to McShane, because the bank was the real owner of the indebtedness secured by the first mortgage and covered by the note given to McShane, yet this was only constructive notice on the ground that McShane was the agent of the bank, and whatever was notice to one was notice to the other, and could have been effective, if at all, only so far as this one mortgage was concerned.    It certainly cannot be claimed that the notice to the cashier was also notice to the parties secured by the second mortgage, given to McShane as trustee.    The bank had no interest or concern whatever in that.    If those creditors could have been affected at all by notice in this respect to McShane, because of his being trustee for them in the mortgage, we cannot see how anything short of actual notice would have sufficed.    Waiving this question, however, we are of opinion that the statements of Blair to the cashier were wholly insufficient to show knowledge by, or notice to, the mortgagees, or any of them, of any

fraudulent purchase of goods by Rachofsky, or of any intent on his part to transfer his property with intent to hinder, delay or defraud his creditors. It was at most simply an expression of a belief on his part, which might or might not prove to be true, that Rachofsky was preparing for a failure. There must be something more than this to preclude a *bona fide* creditor from protecting himself on the ground of alleged knowledge by him of fraud on the part of his debtor, or of collusion by him with such debtor in order to defraud his other creditors. Such a principle would be contrary to all commercial usage and law. It would, indeed, be an assistance or aid to fraud in some cases, and deprive a vigilant and diligent creditor of the right to protect or secure himself at the time when he most needed to do so. The mere statement to him that in the opinion of somebody, his debtor was contemplating a failure and intended to defraud his creditors, would be sufficient, and in consequence of this opinion of somebody, expressed to him, the securing of his honest debt must be deferred to that of all other creditors. The statement might be made for the very purpose of disabling the creditor from taking any steps to protect himself, and yet it would be effective if this doctrine be upheld. Surely this is not in accord with either reason or justice. The mortgagees in this case could have made or secured their debt by attachment, if the statements by Blair amount to what is claimed by counsel; and if this be the case, why should they be precluded from doing the same thing at far less expense and trouble, by securing a mortgage, the debtor being willing? There was nothing whatever in Blair's statements of facts to the bank cashier tending to show that Rachofsky was securing goods under fraudulent representations so as to render his contracts of purchase fraudulent, voidable, or void. We think that the defendant wholly failed to sustain this branch of his defense, which it was absolutely necessary for him to do before he could defeat a recovery by the plaintiffs; and hence, there being nothing to submit to the jury upon

this point, the court did not err in instructing the jury to return a verdict for the plaintiffs.

5. Counsel for defendant suggest that the right of an insolvent debtor in this state to prefer one or more creditors to the exclusion of others, is restricted by a special statute of late date. Laws, 1897, page 262. This statute provides in effect that one who purchases goods upon credit, and before paying therefor, sells, hypothecates, pledges, or otherwise disposes of the same out of the usual course of business, and with intent to cheat or defraud the vendor, shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by fine or imprisonment, or both. In their argument, counsel seem to go further, and practically contend that this act prohibits a preference. In both contentions, we think the position of counsel is incorrect, to the extent at least that the statute was not intended to have any effect whatever in the determination of the validity or invalidity of any contracts of sale made by the vendor. In this respect, it extended no greater protection to the creditor than the law gave him before this statute was enacted. It was simply a penal statute, intended to punish the man guilty under its provisions. The authorities cited by counsel in support of their contention are not in point. They are only to the effect that a court will not aid either party in enforcing or in avoiding a contract which is prohibited by statute. In any event, there was no evidence to bring this case within the statute, even giving to it the broad construction contended for by defendant. It certainly cannot be admitted that even if a party should render himself liable to the penalty of the statute by a sale or disposition of property in a manner prohibited by the statute, the innocent purchaser or assignee for value, or *bona fide* mortgage creditor should suffer, unless it be first shown that he had knowledge of, or participated in, the intent of his assignor or grantor or mortgagor to defraud.

6. Defendant also contends that there was error because the plaintiffs did not make sufficient proof of the consideration for the various debts secured by the two mortgages.

Having made a *prima facie* showing in this respect, this burden was not upon plaintiffs, if at all, until after it had been first shown by the defendant that the purchase by Rachofsky from them was fraudulent, and under such circumstances that they had a right to rescind, or that the mortgages were executed with the intent on the part of Rachofsky to hinder, delay or defraud his creditors, and that the mortgagees had knowledge of such fraudulent purpose or fraudulent intent. Of this, there was no proof, as we have held. No doctrine contrary to this is announced in *Reid, Murdoch & Co. v. Bird*. That, as we have seen, was an action in replevin maintained in pursuance of a right of the vendor to rescind the sale for fraud, and the plaintiff had a right to recover as we held, even though the mortgagee had no notice nor knowledge of the fraudulent purchase. It was there held that the fraudulent purchase, which gave the plaintiff the right to rescind the sale, having been shown, the burden then rested upon the defendant mortgagee to defend his title, and to establish by evidence, if he could, the validity and good faith of the mortgage. This presents an entirely different case, and is controlled by the usual and established rule to which we have referred, namely, that the burden is first upon him who assails the transaction to make proof of its fraudulent character, or of the fraudulent intent of the grantor or mortgagor, and of the knowledge of, or participation in, such fraud by the grantee or mortgagee, before the latter is put upon his proof to defend his title.

For the reasons given, we think the judgment must be affirmed, and such will be the order.

*Affirmed.*