### [No. 1776.]
## REID, MURDOCH & CO., A CORPORATION, v. BIRD.

1. FRAUD—MISREPRESENTATIONS TO MERCANTILE AGENCY—SALES— RESCISSION.

Where a purchaser of goods makes false representations of his financial standing to mercantile agencies and the vendor relies on the false representations in making the sale, he may rescind the sale, although at the time the representations were made there was no distinct and direct intention to defraud the vendor who sold the goods.

2. SALES—EVIDENCE—INSOLVENCY—INTENT.

Insolvency alone would not be sufficient to warrant a finding of a fraudulent intention in the purchase of goods, but in connection with other facts it is a proper subject-matter of proof, and is always a fact for the jury to consider as tending to show the motive of the vendee when the purchase was made.

3. SALES—MISREPRESENTATIONS TO COMMERCIAL AGENCIES—CHATTEL MORTGAGE—INTENT OF PURCHASER—QUESTION FOR JURY.

In an action to recover goods claimed to have been purchased through fraudulent misrepresentations where the evidence tended to show that the purchaser had misrepresented his financial standing to

mercantile agencies, that the vendor relying on the truth of the report made to the agencies was induced to make the sale, and that immediately upon delivery of the goods the vendee executed a chattel mortgage to defendant to secure a pre-existing indebtedness, it was plaintiff's right to have the question of the purchaser's intent in making the report to the mercantile agency and in purchasing the goods submitted to the jury and a judgment of nonsuit was erroneous.

4. SALES—CHATTEL MORTGAGES—BURDEN OF PROOF.

In an action by a vendor against a chattel mortgagee of his vendee to recover goods claimed to have been purchased through fraud of his vendee, should the jury find from the testimony that the vendee was insolvent at the time the goods were purchased and had no intention of paying for them, or that credit was obtained through misrepresentations by the vendee of his financial status, whereby under the law the vendor would have a right to rescind the sale, then in order to defend his title it would be incumbent on the mortgagee to prove the character of his mortgage, the consideration on which it was based, and in general to uphold his title.

5. SALES—CHATTEL MORTGAGES—FRAUD.

A creditor who takes a chattel mortgage on goods to secure a pre-existing debt of his mortgagor acquires no such rights as belong to a purchaser for a valuable consideration without notice, and no title to the goods as against the vendor of the mortgagor who had a right to rescind the contract of sale on account of fraud of the mortgagor in the purchase of the goods and who acted promptly in asserting such right.

*Appeal from the District Court of La Plata County.*

Messrs. ROGERS, CUTHBERT & ELLIS, Mr. T. J. JACKSON and Mr. F. C. PERKINS, for appellant.

Mr. PIERPONT FULLER, of counsel.

Mr. O. S. GALBREATH, for appellee.

BISSELL, P. J.

A debt for goods of the value of about $500 is the subject-matter of this action brought by Reid, Murdoch & Company against the Schutt Mercantile Company and Willis E. Bird. The case went off on a nonsuit and we state the facts as we

find them.   What we may say about them is not to be taken as an unquestionable narrative, nor may any of our suggestions be used to influence a jury hereafter.

The case was begun in the county court and afterwards tried in the district court.   The Schutt Mercantile Company was a commercial corporation doing business in Durango. It had been transacting business for some years, and in October and November, 1896, bought the goods sued for.   Part of them were sent on telegraphic order from a salesman, and part of them were delivered from a supply house in Durango. The goods were all delivered early in November, 1896.   About the time of the sale the mercantile company became embarrassed, and as we may be permitted to state, though the instrument is not before us, gave a chattel mortgage to the defendant Bird to secure debts owing to the Colorado State Bank of Durango and the Struby-Estabrook Company.   Whether the mortgage secured any other creditors we are not advised. Bird took possession and proceeded to close out the stock. Reid, Murdoch & Company immediately instituted inquiries about it, traced the goods and found that they had been turned over to Bird.   They served a written demand on him for them with which he refused to comply.   It did not very clearly appear whether at the time of the demand Bird had all the goods, nor whether all of them were turned over to him under the mortgage, though that he received some and had some in his possession at that time appears from his admissions.   Thereupon the plaintiffs brought this suit against the mercantile company and Bird to recover the goods or their value, setting up facts which if established entitled them to rescind the sale on the ground of fraud, and therein had judgment against the mercantile company, but were nonsuited as to Bird.   During the trial the plaintiff produced testimony tending to prove that the Schutt Mercantile Company through its proper officers had made statements to Bradstreet & Company and Dun & Company concerning their financial condition and the representatives of those two mercantile agencies testified as to the statements which had

been made. They also offered evidence tending to prove that prior to the sale the credit man of the house in Chicago examined the reports made the preceding November carried on the agency books and appearing in the reports of the July and October following. Smith attempted to give evidence to the point that he examined the reports before he ordered the goods boxed and shipped, and also before he ordered them delivered from the warehouse in Durango. The plaintiff also offered evidence to the point that the statements furnished by the company were untrue, and that at the time they were made the company owed the state bank some $20,000 more than they reported, and that there was a very large amount of bills payable excluded from them. If all these facts were true, and the jury should so find, it might well be contended that the creditors had the right to rescind, exercising it within a reasonable time after the discovery of the fraud.

The matter of reports to commercial agencies has been before this court, and while I expressed some doubt regarding the propriety of the rule which had been adopted by the various courts, believing that there ought to be proof not only of a report but a report made with the intent to deceive the vendor bringing suit, yet we conceded the law to be that where there is ample proof of a misrepresentation to the agencies, or either of them, and proof of a reliance on the report for the purposes of sale, the vendor may rescind, even though when the report was made there was no distinct and direct intention to defraud the vendor who sold the goods. This we stated and held in *Burchinell v. Hirsch et al.*, 5 Colo. App. 500. This doctrine is necessarily subject to some other limitations which need not be expressed. There was evidence tending in this direction and the plaintiff was entitled to have the question go to the jury under proper instructions concerning its force and effect. It is always true that insolvency is a fact for the jury and has some bearing on the question of intent. Alone it would not be sufficient to warrant a finding, but in connection with other facts, it is proper subject-matter

of proof and possibly may tend to show the motive of the vendee when he made the purchase. *Brock et al. v. Schradsky,* 6 Colo. App. 402. In the light of these authorities, it was undoubtedly the plaintiff's privilege to have the question of the intent with which the mercantile company bought the goods submitted to the jury, and likewise that with which the report was made to the commercial agency on which the plaintiff's credit man relied when he made the sale; at least, the statement on which he said he relied when he made it. We do not intend to say that his evidence directly established the fact that he relied on the report rather than on the general reputation of the mercantile company which prevailed in commercial circles. His testimony is open to discussion because the date of the sale and the date of the inspection of the record are not exactly concurrent, but these are wholly matters for the jury. It is quite generally true that where a mercantile concern is heavily embarrassed and buys goods, and almost concurrently with the purchase, mortgages all of its assets to secure certain preferred creditors, there arises in the mercantile mind a suspicion that it bought the goods with an intent not to pay for them, but to devote them to the liquidation of debts due certain creditors. These are matters for the consideration of the jury, and it is for them under proper instructions to determine the intent of the purchaser and the force and effect of the evidence. The case was not so broadly or fully made that we feel at liberty to state abstractly the law with reference to what will establish a fraudulent intent and the extent to which a plaintiff must go in maintaining it if he would recover. To lay down general principles on this subject would simply embarrass the trial court and afford it no aid.

It is quite earnestly insisted by the attorney for the appellee that the plaintiffs do not sufficiently attack Bird's title because they failed to prove value or to overthrow the mortgage or attack its good faith. We think he is wrong with respect to both propositions. There is enough evidence of value to go to the jury wherefrom they could ascertain the

market price of the goods. It was not entirely clear nor wholly full and accurate, but there was enough whereon to submit the matter to them.

Respecting the other branch of the proposition, and that is the burden to establish the validity and good faith of the mortgage, we think that the rule is misstated. Should the jury find from the testimony that the mercantile company were insolvent when they bought the goods and had no intention to pay for them, or that they misrepresented their financial status whereby they procured credit and whereby under the law the vendor would have a right to rescind the sale, then in order to defend his title, it would be incumbent on Bird to produce proof of the character of his mortgage, the consideration on which it was based, and in general uphold the validity of his title. This seems to be the general current of authority on this question. *Starr Bros. v. Stevenson*, 91 Ia. 684; *Easter v. Allen*, 8 Allen, 7; *Shotwell v. Harrison*, 22 Mich. 410; *Sillyman v. King*, 36 Ia. 207; *Dry Goods Co. v. Kahn Bros.*, 53 Kan. 274; *Wafer v. Harvey County Bank*, 46 Kan. 597; *Devoe v. Brandt*, 53 N. Y. 462; *McLeod v. First Nat. Bank*, 42 Miss. 99. Many others might be cited. The courts are in unison and we have been referred to none which announce a contrary doctrine.

It it quite true the cashier of the State Bank was put on the stand by the plaintiff to show the untruthful and misleading character of the statement which the mercantile company had furnished the commercial agencies. From Mr. Kimball's evidence it is quite evident the bank's account was represented to be some $20,000 less than it was when the report was furnished, but he also testified that Mr. Bird was the mortgagee in possession of the property in the interest of the Colorado State Bank and Struby-Estabrook & Company. From his evidence it would likewise appear Bird had no personal interest in the matter, but was simply the representative of those two creditors. It is sought by argument to give this evidence greater weight than it is entitled to for the purposes of this appeal. The appellee insists it appeared from the plain-

tiff's own case the mortgage was given in good faith to secure *bona fide* debts, but we do not regard the evidence as sufficient. We are not advised thereby of the terms and conditions of the mortgage, nor have we an opportunity to inspect it to determine whether on its face it was valid, nor in fact do we believe that Mr. Kimball's testimony was enough to establish that the mortgage was given to creditors in good faith to secure debts then due and owing which were protected by a legal instrument properly executed and sufficient to transfer title to Bird as the representative of those creditors. We are quite of the opinion the evidence did not go far enough to support the burden which the cases already cited put on him who buys from a fraudulent vendee, and seeks to protect his title on the theory that he is an innocent purchaser for value. The evidence was not broad enough nor full enough. This suggestion is made in answer to the contention that even though the nonsuit may have been wrong on the hypothesis that the plaintiff made a case to go to the jury, yet it was right because the plaintiff produced evidence which established the defendant's title. When once this proposition is disposed of, the error committed in the ordering of a nonsuit is practically determined.

We are compelled, however, to advert to another proposition on which the appellee greatly relies. By the argument he seeks to apply a doctrine which has been expressed in several cases in the supreme court and by a quotation from an early opinion which is, " that one who takes property in payment or security of a pre-existing debt is to be regarded as a purchaser for valuable consideration." This doctrine was very early announced and ever since that time the courts have universally held that a pre-existing debt is a good consideration for the transfer of property either in payment of, or as a security for a debt. This, however, has only been holden so far as the cases themselves show where there has been an actual transfer of the title, or a turning over of the property in payment, or as a security. We have been referred to no case, nor have we found one where it has been held that the

execution of a chattel mortgage on personal property on the consideration of a pre-existing debt, would be a valid transfer unassailable by a vendor who had the right to rescind the sale on the ground of fraud. . Since these cases are pressed so urgently on our attention we will refer to what the supreme court has decided. The cases are: *Knox v. McFarran*, 4 Colo. 586; *McFarran v. Knox*, 8 Colo. 217; *McMurtrie v. Riddell*, 9 Colo. 497; *Merchants' Bank v. McClelland*, 9 Colo. 608.

In the first case Rose owned the property and gave a title bond to Kettlewell for a named price. It was afterwards assigned by mesne transfers whereby it vested in McGovney, who became the holder of the bond and entitled to the conveyance on the payment of the consideration. In January, McGovney took up the bond, paid the consideration and delivered the instrument to Rose, who destroyed it, but Rose did not then make the deed to Knox. That was done in January, 1876. Suit in ejectment was then begun to recover possession. McFarran undertook to defend contending that he was McGovney's creditor when the deed was executed, and attempted to make proof of the want of consideration as between McGovney, Rose and Knox. In that suit he was defeated because in an action in ejectment under the old practice the legal title must prevail and Knox had judgment. Subsequently, however, McFarran filed a bill in equity in the proper county and alleged that he had recovered judgment against McGovney prior to the time of the transfer, filed his record in the proper office, and thereby obtained a lien superior to the title which Knox subsequently got by the conveyance from Rose. McFarran had judgment and when the case came to the supreme court the judgment was affirmed on the ground that the bond was a proper instrument for record under the recording act, and since it was not filed McGovney's claim took precedence. It will be observed the whole case turned on the recording act and the failure to comply with it and want of knowledge on McFarran's part of the outstanding title.

The next case was *McMurtrie v. Riddell*. Respecting this
it is enough to say that the record title stood in Wightman
who deeded to McMurtrie, who held title by an unrecorded
deed until the 10th of August, 1881, although the deed was
dated in December, 1879. Riddell bought the property at an
execution sale had on a judgment against Wightman on the
15th of November, 1880, and he became entitled to his deed
which he got on the 16th day of August, 1881. It will be
noticed that the record of McMurtrie's deed preceded the
record of Riddell's by six days, although the purchase at the
execution sale antedated the record of McMurtrie's title.
Under these facts the supreme court very properly held that
a purchaser at an execution sale took title as against the un-
recorded deed.

The next case and the only other in the supreme court to
which our attention has been called is that of *Merchant's
Bank v. McClelland*. It is sufficient to say that this only
concerns the title to commercial paper and can in no sense
be regarded as a direct authority on the proposition, that he
who takes property in payment of or as security for a pre-
existing debt, is to be regarded as a purchaser for a valuable
consideration. The rights of a holder of commercial paper
wholly depend on other considerations. In all jurisdictions,
even those which do not concede that a pre-existing debt is a
good consideration for the sale of property or its pledge, it is
universally held that one who takes title to commercial paper
either in payment of a debt or as a security for it, gets a good
title if he receives it without notice. The holder of commer-
cial paper who takes it in the usual course of business is un-
affected by the equities of antecedent parties. The rule is
the same whether the instrument is received as a security for
or in payment of the pre-existing debt. This is conformable
to the recognizable usages of the commercial world, and had
its origin in the necessity to protect commercial paper in the
hands of the holder. This doctrine was very clearly an-
nounced by the supreme court of the United States in *Swift
v. Tyson*, 16 Peters, 1. This case has always been followed

by that tribunal.   We note, however, in the *Bank* case, that the distinguished author of the opinion, Mr. Justice Helm, italicizes the word "property" when he makes the quotation from *Knox v. McFarran*, as though intending to intimate that the court would not extend the doctrine to the case of one who takes a chattel mortgage on personal property as security for an antecedent debt whenever a case arises involving the rights of the holder of such security and of one who attacks the transaction.   There would seem to be no other reason for the implied suggestion.

This court followed the same general rule in *Haraszthy v. Shandel*, 1 Colo. App. 137.   In that case we held the court speaking through me, that Mrs. Shandel took a good title, although there was an attempt to rescind the sale.   The reason for the application of the doctrine is very apparent from the facts.   Therein Haraszthy had possession of the goods and turned them over to Mrs. Shandel on a present consideration.   There was not only a pre-existing indebtedness between Mrs. Shandel and Haraszthy, but there passed at the time of the transfer a present consideration which under all the authorities would make her a purchaser for value.

We now come to the consideration of what will prove a pivotal question in this case, and it may ultimately defeat Bird's title, though whether the facts will permit its application we are at present not advised.   The question, however, is fairly raised by the record, urged by counsel, and we deem it our duty to decide it.   The only modification, if it be deemed a modification of the doctrine expressed in the supreme court cases is first found in *Cassidy v. Harrelson*, 1 Colo. App. 458.   Therein there were conflicting claims between prior and subsequent mortgagees.   We held, undertaking to distinguish it from them and commenting also on *Brereton v. Bennett*, 15 Colo. 254, that subsequent lienors who have taken their security with no other consideration passing between them than the pre-existing debt, hold the goods open to the equities and exceptions as to title which could be asserted if they were in the hands of the mortgagor.   This principle was supported

by the citation of a large number of eminent and persuasive authorities. The decision is justified by the proof that the subsequent lienors had notice and full knowledge of the antecedent security. In this respect it differs wholly from the present controversy.

We are now brought face to face with the proposition whether a creditor can take a chattel mortgage on the property of his debtor, and thereby as an innocent purchaser acquire a good title against the vendor of the goods who has the right to rescind the sale because of fraud in the purchase. This is widely different from any of the cases yet decided in any of the two tribunals. We have been very exact about it because we believe the distinction is an important one and the question is likely to arise many times in this jurisdiction and we know of no way by which the present case can be taken to the supreme court for ultimate determination. We have neither doubt nor hesitation in declaring the doctrine because neither the precise question nor any analogous one has been determined by the supreme court and we find our position sustained by a very late case in the supreme court of the United States ; *Peoples Savings Bank v. Bates*, 120 U. S. 566. There are many other cases tending in the same direction, but personally I am always willing to end my examination of a question when I find a unanimous decision by this tribunal deciding it. In that particular case we find cited *Johnson v. Peck*, 1 Woodb. & Min. 334, 336, wherein it was held that a mortgagee in a mortgage given to secure a pre-existing debt due from a mortgagor who had purchased goods on representations, which entitled his vendor to rescind, acquired thereby no such rights as belong to a purchaser for a valuable consideration without notice, but held the goods open to the same equities and exceptions as to title that they would be open to if found in the hands of the mortgagor. This was a direct and conclusive adjudication on the principal question involved in this litigation. It would therefore follow, if we accept it, that should Reid, Murdoch & Company establish to the satisfaction of the jury fraud in the transaction

between them and the mercantile company, and under the law as the court should declare it, the jury should find that they had a right to rescind the sale, and that they acted promptly, whereby they preserved their rights, Bird by the taking of the mortgage to secure the debts due the Colorado State Bank and Struby-Estabrook & Company acquired no title. It might appear as though we were deciding a proposition which would determine the rights of the parties and absolutely conclude the defendant from making any proof or successfully establishing any defense. This may be true. But the question is fairly presented on the record, it is rightly argued by counsel, and they justly call on us to determine it, and whatever may be its ultimate effect, and though it may be said to be in advance of a submission of the controversy to the jury, we believe it to be our duty to express our views respecting it so that when the case comes to trial, the court being hereby advised, may correctly instruct the jury and the verdict which they may render be conclusive.

This disposes of every question pressed on our attention which we feel at liberty to decide, and for the error which it is apparent from this opinion the court committed in nonsuiting the plaintiff, this case must be reversed and sent back for a further trial in conformity with this opinion.

*Reversed.*