Maxwell, J.
The facts in this case are as follows:
Appellee had been in the employ of The F. H. Stewart Carriage Company,, a corporation, previous to November 1, 1899.
The carriage company was insolvent and unable to pay appellee what it owed him, $150.00.
On or about November 1, 1899, the carriage company discontinued business, that is, it divided its stock in trade, consisting principally of vehicles, ■among certain of its creditors, among whom was *228 appellee, turned over tlie premises, which it had occupied, to a firm composed of A. T. Stewart, who had, up to that time, been the president, or acting president and general manager of the company, and John H. Frost, under the firm name of Stewart & Frost, which firm, since November 1, 1899, has occupied the premises, paid the rent of the same, transacted its business there, under the active management of Frost, with one Edwards in charge of the office and books. It does not appear that Frost had been in any manner connected with the carriage company. Edwards, the bookkeeper of Stewart & Frost, had been in the. employ of the carriage company in various capacities previous to November 1, 1899, but was not an officer or stockholder of the company.
Appellee was the father of A. T. Stewart, who, as before stated, was the president of the carriage company, and for this reason, apparently, the settlement with appellee, and apportionment to him of the property of the carriage company, was made by Edwards, the bookkeeper, under the direction and authority of A. T. Stewart.
It is.quite apparent from the record in this case, that all the stock in trade of the carriage company was transferred to appellee and other employee creditors, in satisfaction of the several demands of such employees, held against the company for services by them rendered to it.
The property thus transferred to appellee and other employees was not removed from, the warehouse and shop formerly occupied by the carriage company, and was there remaining, with the consent of Stewart & Frost, when the executions were levied, as hereinafter set forth, nor was such property marked or in any manner designated as the property of appellee and the other persons to whom the same had been transferred.
*229 The appellee and other employees received the property transferred to them in settlement and satisfaction of their respective claims against the carriage company.
After November 1, 1899, when the carriage company ceased business and Stewart & Frost entered into possession of the premises, the signs on the buildings were changed, and since that date the carriage company has not been in possession of the property in controversy, or the premises, and has not exercised any dominion or control over the same, so far as disclosed by this record.
February 8, 1900, appellant, as sheriff of Pueblo county, had in his hands two executions issued out of the district court of Pueblo county against The F. H. Stewart Carriage Company, and on that date, under instructions of the attorney for the judgment creditors, levied these executions on the personal property found in the warehouse of Stewart & Frost, including the property in controversy in this action.
A. T. Stewart was in the office of Stewart & Frost, formerly the office of the carriage company, when the sheriff came there, and had some conversation with the sheriff as to the property which was subsequently levied upon, during which conversation, Stewart told the sheriff that there was no property of The F. H. Stewart Carriage Company there, that the property belonged to someone else, and that the furniture in the office was his personal property. In reply to this the sheriff said to A. T. Stewart that he had been indemnified, was acting under instructions of the attorney for the judgment creditors, came there to make the levy on the property in the warehouse, and intended to make it.
Appellee was also present, and at or about the time the lew was made, claimed certain personal property in the warehouse which was not included in *230 the levy, and is not the property in controversy in this action.
The levy was made, and subsequently the property was advertised and sold under the executions. The day following the levy appellee demanded the return to him, as his property, of four or five vehicles which were in the warehouse, but which he had not claimed the preceding date, which demand • was refused. Two days later appellee commenced suit against appellant before a justice of the peace for the recovery of the value of the property levied upon by the sheriff, and demanded by him. Judgment went against appellee in the court of the justice of the peace. He appealed to the county court, where the case was tried to the court without a jury, resulting in a judgment in appellee’s favor, and appealed here.
Counsel for appellant relies upon several grounds for the reversal of the judgment in this case, which will be considered in the order in which they are presented in his brief.
It is earnestly insisted that there was not, in this case, such an immediate delivery, and actual, open, notorious and exclusive change of possession of the property in controversy, as is required by. the statute of frauds of this state. A large number of authorities are cited in support of this contention. The books are full of decisions of the question involved, and no good purpose' can be accomplished by a discussion of these decisions, as the appellate courts of this state have passed upon almost every conceivable phase of this statute.
The trial court necessarily found, in arriving at the judgment rendered in this case, that the delivery and change of possession, required by the statute, had taken place. We have examined the testimony with a great deal of care, and are entirely satisfied *231 that there was abundant evidence introduced to show a compliance with the statute in this regard.
Appellant contends that a pre-existing debt is not such a consideration as will sustain the plea of a bona fide purchaser for value. The courts of this state have decided otherwise. — Knox v. McFarran, 4 Colo. 586; Haraszthy v. Shandel, 1 Colo. App. 137.
The question of estoppel in this case is disposed of by the opinion of this court in Beaman v. Stewart No. 2324, ante, page 222, decided at this term, wherein the facts are substantially the same as those in the case under consideration.
. It is urged that the assets of corporations are a trust fund in the hands of thé directors for the benefit of all the creditors, and therefore the distribution of the assets of the corporation, above set forth, was fraudulent and void as to these creditors. This court has otherwise decided in Farwell v. Sweetzer, 10 Colo. App. 421, wherein it is held: “But aside from all this, the weight of authority is that, in the absence of legislative prohibition, a corporation, even though it be insolvent, has the same power to make a distinction between creditors, and give preferences to some over others, that a natural person has. Dana v. Bank of the U. S., 5 W. & S. 223; Wilkinson v. Bauerle, 41 N. J. Eq. 635; Catlin v. Bank, 6 Conn. 233; Hospes v. Mfg. Co., 48 Minn. 174; Morawetz on Corporations, § 802; Beach on Private Corporations, § 358.”
The contention that the apportionment of the property of the corporation, made by and under the authority of its president and general manager, was void as to these judgment creditors, because the same was made without authority from the board of directors of the corporation, cannot be maintained by appellant, as the directors and stockholders of the *232 corporation are alone vested with power to question the actions of the managing officer of the company, under the facts of this case.
The evidence in the record is against the position of appellant, that the value of the property apportioned to appellee was so largely in excess of the amount due appellee from the company as to render the transaction fraudulent and void as to the creditors of the company. In any event, the judgment of the trial court was one-third less than the undisputed testimony showed the corporation to be indebted to appellee.
As to the measure of damages, in actions of this nature, the rule in Beaman v. Stewart, supra, is controlling, under facts identical with those in the pending case.
Having decided adversely to appellant, all of the propositions urged in his behalf for a reversal of the judgment of the trial court, and as there is no error in the record, the judgment will be affirmed. '

Affirmed.