In re J. S. APPEL SUIT & CLOAK CO.

(District Court, D. Colorado.   August 1, 1912.)

1. BANKRUPTCY (§ 140*)—TRUSTEE—RECLAIMING GOODS FRAUDULENTLY PRO-
CURED.

Bankruptcy Act July 1, 1898, c. 541, § 47, subd. "a," cl. 2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), providing that trustees, as to all property coming into the custody of the bankruptcy court, shall be vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, did not deprive a petitioner of his right in the Colorado jurisdiction to rescind an unconditional sale made to the bankrupt corporation in reliance on a fraudulent statement to a commercial agency and to reclaim that part of his goods which came into the hands of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*]

2. EVIDENCE (§ 317*)—HEARSAY—REPORT BY AGENTS.

In the hearing on a claimant's petition praying for an order on a trustee in bankruptcy for the return of goods shipped to the bankrupt corporation, claimant's testimony as to a conversation between his agents and the bankrupt's officer and reported to him by his agents was incompetent to establish either that the shipment was on consignment and not as an absolute sale, or that it was made in reliance on false statements by the bankrupt as to its solvency.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

3. BANKRUPTCY (§ 303*)—RECLAIMING GOODS FROM TRUSTEE—EVIDENCE.

Where such claimant testified that the goods were shipped in reliance on reports made by the bankrupt to a commercial agency and attached three reports to his deposition, two of which bore dates after all shipments had been made and the other after a part had been made, said dates appearing to have been placed on said reports by the agency which sent them to claimant, such testimony left grave doubt as to whether he relied on any of said reports.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

4. BANKRUPTCY (§ 184*)—PROPERTY—CONDITIONAL SALE.

A contract specifying that the title to a pneumatic tube system sold to the bankrupt should remain in the seller until fully paid for, being fraudulent and void in Colorado as against creditors who acquired a lien without notice, was void under Bankruptcy Act July 1, 1898, c. 541, § 47, subd. "a," cl. 2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), as against the trustee of the buyer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the J. S. Appel Suit & Cloak Company, Bankrupt. Referee denied the petitions of the Fabian Manufacturing Company, S. J. Jackson, doing business under the style of the S. J. Jackson Manufacturing Company, and the Lamson Consolidated Store Service Company. Order reversed in part, and affirmed in part.

Thomas, Bryant, Nye & Malburn, of Denver, Colo., for Fabian Mfg. Co.

Bicksler, Bennett, Dana & Blount, of Denver, Colo., for S. J. Jackson and Lamson Consol. Store Service Co.

Rogers, Ellis & Johnson, of Denver, Colo., for trustee in bankruptcy.

LEWIS, District Judge. The Suit and Cloak Company, a Colorado corporation, is an involuntary bankrupt under decree of October 14, 1911, on petition filed 22 days prior thereto.

The Fabian Company, claimant, is a corporation doing business in the state of Ohio, and certain merchandise which it had sold and delivered to the bankrupt within three months prior to adjudication was in the place of business of the bankrupt in Denver at the time of adjudication. On November 3, 1911, the Fabian Company filed its petition in the bankruptcy proceedings alleging therein its rescission of the contract of sale of said merchandise on account of alleged fraudulent practices by the vendee, said bankrupt, in the purchase of said merchandise, and praying therein for an order on the trustee to return to it said merchandise then in his possession.

S. J. Jackson, claimant, is doing business in the state of New York in the name of S. J. Jackson Manufacturing Company, and certain merchandise which he delivered to the bankrupt between May 8th and July 24th, next preceding adjudication, was in the possession of the bankrupt at its place of business in Denver at the time of adjudication. On November 6, 1911, he also filed his petition wherein he prayed for an order on the trustee to return said merchandise to him, alleging therein that he had not sold said merchandise to the bankrupt, but only consigned it for sale, that that to be sold should be paid for at the prices designated and that not sold should be returned to him within a specified time. He also alleges fraudulent practices on the part of the bankrupt in obtaining from him said merchandise on the conditions above named.

The Lamson Company, claimant, is a corporation doing business in the state of New Jersey. On March 20, 1911, it entered into a written contract with the bankrupt by which it agreed to provide the material and construct in the building and place of business of the bankrupt at Denver a pneumatic tube system for the agreed sum of $818, payable to it in instalments thereafter. It complied with the contract on its part, but has not received any part of the sum due it. It also filed a petition on November 11, 1911, asking for an order on the trustee to deliver to it the tubes and material composing said system. It alleges that by the terms of its contract it retained title to said property until the same should be fully paid for, and, further, that said contract was induced by fraudulent practices on the part of the bankrupt.

By agreements between the trustee and the respective claimants the property claimed by each of them was set aside, after it had been identified, and sold separately from the bankrupt's other assets, and the funds arising therefrom have been retained by the trustee to abide the termination of their respective claims.

The referee denied the petitions of all of the claimants and his certification here discloses that he took this action on account of the amendment to section 47, clause 2 of subdivision "a" of the Bankruptcy Act, said amendment being found in the act approved June 25, 1910, c. 412, 36 Stat. 840, viz.:

"And such trustees, as to all property in the custody or coming into the custody of the Bankruptcy Court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon."

[1] I. The proof adduced by the Fabian Manufacturing Company to sustain its claim and certified here, establishes these facts: In January, 1911, the bankrupt made to R. G. Dun & Co., a mercantile agency, a written statement of its then assets and liabilities by which it appeared that its assets then exceeded its liabilities to an amount more than $19,000. This statement was given by the bankrupt for the purpose and with the knowledge on the part of the bankrupt that it would be circulated in the trade and that on it credit would be fixed and extended to the bankrupt. The bankrupt was not at that time a customer of the petitioner. The bankrupt sent to the petitioner June 17, 1911, its written order and request, by the hand of one of petitioner's traveling salesmen who had solicited in Denver, for the purchase of a large bill of merchandise. Immediately on the receipt of the order the petitioner applied to R. G. Dun & Co., at its Cincinnati office, for report to it on the financial standing of bankrupt, and received in reply a copy of the statement made by the bankrupt in January preceding, noted above. On this statement petitioner extended credit to the bankrupt, accepted its order and shipped the goods therein called for, beginning in the late days of July and extending up to September 9, 1911. The sale was unconditional. The bankrupt did not pay for the goods. The proof is clear and positive to the effect that credit was extended and the goods shipped by petitioner relying on its belief that the financial report made by the bankrupt to R. G. Dun & Co., and by it communicated to petitioner, was a true statement of its financial worth at the time said statement was made. Said statement was at that time untrue and grossly false. The bankrupt was then hopelessly insolvent. Its liabilities at that time greatly exceeded its assets. It then knew that its assets were not then sufficient to meet its liabilities and that its failure was imminent. Its insolvent condition was thenceforth intensified.

The petitioner had no knowledge of the insolvent condition of the bankrupt until after proceedings in bankruptcy were instituted.

On these facts it is the general rule that the vendor is entitled to rescind the sale and reclaim the goods sold from the vendee and from all others who are not bona fide purchasers for value, on discovering the fraud of his vendee. 1 Benjamin on Sales, §§ 648, 649; 2 Pom-

eroy's Eq. Jur. §§ 777, 778; Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1174, 23 L. Ed. 391; Stove Co. v. Mitchell (D. C.) 117 Fed. 774; Reid, Murdoch & Co. v. Bird, 15 Colo. App. 118, 61 Pac. 353.

And this right in the vendor to retake his goods is superior to a judgment lien (2 Pomeroy's Eq. Jur. § 721 et seq.), to a mortgage lien for a preexisting debt (Id. § 749; Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754; Broom Co. v. Guymon, 115 Fed. 112, 53 C. C. A. 16; Reid, Murdoch & Co. v. Bird, 15 Colo. App. 116, 61 Pac. 353), and to an attachment levy (Mining Co. v. Lambert, 15 Colo. App. 445, 62 Pac. 966). Such lienors are not armed with the rights of bona fide purchasers.

It is the established rule in Colorado that one who takes possession of property in payment of or security for a preexisting debt can successfully invoke the protection given a bona fide purchaser for value. Knox v. McFarran, 4 Colo. 586; McFarran v. Knox, 5 Colo. 217; McMurtrie v. Riddell, 9 Colo. 497, 13 Pac. 181; Bank v. Campbell, 2 Colo. App. 271, 30 Pac. 357. But the holding to that effect in each of these cases is properly attributable to the requirements of the state recording act in relation to real property. Jerome v. Bank, 22 Colo. 40, 43 Pac. 215. It is held also, in Beaman v. Stewart, 19 Colo. App. 226, 74 Pac. 344, that a preexisting creditor may take his debtor's chattels in satisfaction of the debt and successfully defend his title as a bona fide purchaser for value against an execution levy thereafter made on the same property in behalf of another creditor; but there the debt for which the property was turned over was extinguished. These Colorado cases, except the last two, were carefully considered in Reid, M. & Co. v. Bird, supra, wherein, after noting the holdings of the state Supreme Court to the effect that one who takes property in payment or security of a preexisting debt is to be regarded as a purchaser for a valuable consideration, it is said (at page 122 of 15 Colo. App., at page 355 of 61 Pac.):

"This doctrine was very early announced and ever since that time the courts have universally held that a preexisting debt is a good consideration for the transfer of property either in payment of, or as security for a debt. This however has only been holden so far as the cases themselves show where there has been an actual transfer of the title, or a turning over of the property in payment, or as security. We have been referred to no case nor have we found one where it has been held that the execution of a chattel mortgage on personal property on the consideration of a preexisting debt, would be a valid transfer unassailable by a vendor who had the right to rescind the sale on the ground of fraud."

The amendment to section 47 of the Bankruptcy Act, supra, does not attempt to put the trustee in such a favored position. It only gives him "the rights, remedies and powers of a creditor holding a lien." Prior to the amendment the trustee would have taken title to this merchandise subject to claimant's equities, i. e., a right to rescind the sale induced by the vendee's fraud. Zartman v. Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418. It must therefore be held that in this jurisdiction said amendment does not cut off the right of petitioner to rescind the sale and reclaim the unsold part of its goods. The order of the referee will be reversed and the trustee is directed to pay

over to petitioner, the Fabian Manufacturing Company, the sum in his hands received for the goods of petitioner. It is so ordered.

[2, 3] II. The claimant, S. J. Jackson, delivered to the bankrupt, on its order, between early in May and late in July, 1911, merchandise of the value of about $3,500, for which claimant did not receive payment, and a part of said merchandise passed into the possession of the trustee on adjudication, as already noted. The only testimony bearing upon the character of the transaction between claimant and the bankrupt concerning said merchandise and the fraud on the part of the bankrupt therewith, as alleged in the petition, is that of claimant himself, given by deposition. This testimony, as found in his direct examination, would support the conclusion, (1) that claimant's merchandise was shipped to the bankrupt on consignment for sale by bankrupt and accounting therefor; that there was no sale of said merchandise to bankrupt, and that title to said merchandise never vested in bankrupt, (2) that claimant was deceived and entered into said transaction with bankrupt on account of the same fraudulent practices by bankrupt that induced the Fabian Manufacturing Company to enter into the transaction it had with bankrupt, above noted, and (3) one of the chief officers of bankrupt personally, while at New York, at claimant's place of business there, made false and fraudulent representations as to bankrupt's solvency, which also induced claimant to ship said merchandise to bankrupt. Perhaps it is more proper to say that a part of the direct examination of claimant would lead to this conclusion. But when the entire deposition of claimant is carefully considered, that is, his answers to both the direct and cross interrogatories, a clear impression is left that the conclusions above noted are not justified by his testimony, and the firm conviction is created that all of his testimony is hearsay,—that is, that J. S. Appel, bankrupt's officer, who was at claimant's place of business in New York in behalf of bankrupt, negotiated for the merchandise in question with claimant's agents only, to-wit, Max Stember and Louis Ginsburg, and that said Appel had none of the conversation, about which claimant testifies, with claimant, himself, and that all claimant knows about any such alleged conversation with said Stember and Ginsburg was reported to him by them. This is true both as to the character of the disposition of the merchandise,—whether on consignment or as an absolute sale,—as also the claimed representations as to bankrupt's solvency made by said Appel in person. This testimony also leaves grave doubt as to whether claimant relied upon and acted upon the Dun & Company reports to him, which he attaches to his deposition, and are the same statements made by bankrupt as to its solvency, noted in the claim of Fabian Manufacturing Company. These reports, so attached to the deposition, are three in number and are marked on the back apparently by Dun & Co. with the following dates: June 19, August 23, and August 23, 1911, only the last one mentioned purporting to give in full the assets and liabilities as scheduled to Dun & Co. by the bankrupt in January, 1911; whereas it appears from an itemized account of the merchandise shipped, and attached to the deposition, that the billing out of the merchandise began on May 8th and closed on July

24th, and there is nothing thereon to indicate that the transaction was not an absolute sale. We have the testimony of neither Stember nor Ginsburg, and that of claimant, as already said, is mere hearsay, on which a finding in his favor can not be made. I understand the rule to be that hearsay evidence is not competent to establish a specific fact, which fact is susceptible of being proved by witnesses who can speak from their own knowledge. Mima Queen v. Hepburn, 7 Cranch, 290, 3 L. Ed. 348; Hopt v. Utah, 110 U. S. 581, 4 Sup. Ct. 202, 28 L. Ed. 262; Masonic Ass'n v. Shryock, 73 Fed. 777, 20 C. C. A. 3. The finding of the referee as to this claim is therefore confirmed. It is so ordered.

[4] III. The Lamson Company alleges in its petition the same false and fraudulent financial statement to Dun & Co. in January, 1911, noted above, but it offered no evidence that it relied upon the same in entering into the contract on March 20, 1911, for the installation of the pneumatic tube system which it constructed for the bankrupt. It offered in evidence that written contract and it contains these provisions:

"17. It is hereby understood and agreed that the pneumatic tube system as above specified shall remain the property and in the custody of the Lamson Consolidated Store Service Company or its legal representatives, until the full consideration for the entire plant is fully paid by you. When this full payment is made, this company will deliver to you a good and perfect title conveying full ownership in the entire plant.

"In case of your default in making any of the payments as above specified, or in case of your insolvency, or any assignment for the benefit of your creditors, or in case of voluntary proceedings by you, or involuntary proceedings against you in insolvency or bankruptcy, then in any of the said cases, the whole contract price is to become immediately due and payable and the Lamson Consolidated Store Service Company or its legal representatives shall have the right to enter your premises without further notice, to take possession of and remove said system or any part thereof without being liable therefor in any way either at law or in equity. And such sum or sums as you may have paid under this contract, shall be applied on account of the whole contract price, and we shall be entitled to approve the balance of the contract price and for extras furnished against your estate, allowing upon such claim a fair price for the tubes, terminals and machinery which we have taken from your premises under this agreement."

There being no evidence to establish the contention of claimant that the contract was induced by fraud on the part of the bankrupt the rights of claimant must be determined by the written contract itself. It is unnecessary to determine whether the contract in the clause quoted operated as an absolute sale with the reservation of a secret lien or whether its effect was a conditional sale of the tube system. In either event it would be constructively fraudulent and void as against creditors who had acquired a lien without notice of the rights of the vendor. George v. Tufts, 5 Colo. 162; Coors v. Reagan, 44 Colo. 126, 96 Pac. 966. The trustee is by the amendment to the Bankruptcy Act clothed with the rights of such creditors. The order of the referee disallowing the claim of this petitioner is also confirmed. It is so ordered.