## In re BALTIMORE SHOE HOUSE.

### Petition of OHIO SHOE CO.

District Court, D. Maryland. June 1, 1927.

### No. 4790.

1. Bankruptcy ⟞140(2)—Buyer's insolvency at time of sale does not always justify inference of intent not to pay for goods.

Insolvency of buyer at time of sale, as bearing on seller's right to reclaim goods after buyer's bankruptcy, does not always justify inference of intent on part of buyer not to pay for goods.

2. Bankruptcy ⟞140(2)—Bankrupt's deliberate issuance of grossly false statement to mercantile agency before purchasing goods held substantial evidence of fraudulent intent.

The deliberate issuance of a grossly false statement of assets by bankrupt to mercantile agency, a short time before purchase of goods, is substantial evidence of fraudulent intent on part of buyer.

3. Bankruptcy ⟞140(2)—Bankrupt's issuing false statement to mercantile agency before buying goods held in effect to constitute "material false representation" to seller.

Evidence showing that buyer, before purchasing goods, issued grossly false statement of assets to mercantile agency, held in effect to constitute material false representation to seller, as bearing on seller's right to reclaim goods after buyer's bankruptcy, in view of fact that in such circumstance the mercantile agency is buyer's representative.

In Bankruptcy. In the matter of the bankruptcy of the Baltimore Shoe House. On petition of the Ohio Shoe Company for reclamation of merchandise sold to bankrupt. Petition granted.

John L. G. Lee, of Baltimore, Md., for petitioner.

Baldwin & Sappington, of Baltimore, Md., for trustee.

SOPER, District Judge. The bankrupt had been engaged in the wholesale and retail shoe business for a number of years prior to January, 1926, conducting a number of stores in Baltimore City and in the states of Virginia, North Carolina, and Pennsylvania. On January 25, 1926, it voluntarily submitted to R. G. Dun & Co., a mercantile agency, a financial statement of its condition as of January 1, 1926, which showed that, exclusive of capital stock, it had a net worth of $223,034.31. As a matter of fact, the bankrupt on January 1, 1926, and when the statement was made, as its officers well knew, had no net worth, but was actually insolvent. The statement was undoubtedly sent to the mercantile agency with the fraudulent purpose, on the part of the bankrupt, to establish a credit to which it was not entitled, and to secure the shipment of goods for which it was unable to pay. No evidence was offered on behalf of the bankrupt to show that the statement was the result of mistake, or that it was honestly believed to be true.

R. G. Dun & Co. gave the concern first-rate credit—from $125,000 to $200,000—and listed it in its quarterly publication of March 1, 1926. It will be observed that the rating was substantially less than the net worth of the company, as indicated by its statement. There is some suggestion in the record that the rating was based, not merely upon the statement, but also on other information available to the agency; but, when representatives of the agency were on the witness stand, what information, if any, it possessed,

other than that contained in the statement, was not elicited. Whatever it was, was obviously incorrect. The only reasonable conclusion of fact from the testimony is that the bankrupt deliberately sent the false statement for the purpose of securing an unwarranted rating, and that the rating received was based upon the statement, and, except for it, would not have been given.

On May 1, 1926, a salesman of the Ohio Shoe Company obtained an order from the bankrupt for shoes, amounting to $3,169.20. Upon receipt of the order, the credit manager of the seller looked up the rating of the bankrupt in the book of R. G. Dun & Co., and, relying upon what he there ascertained, granted credit and shipped the goods, to be paid for as of August 15, 1926. Shortly thereafter the financial difficulties of the bankrupt could no longer be concealed, and a creditors' committee was appointed in the latter part of July, or in the first part of August. The petition in bankruptcy was filed on August 28, 1926. The goods have been kept intact and have been identified. The seller has filed a petition, praying that they be returned on the ground that the sale was induced by the fraud of the bankrupt.

[1, 2] The trustee in bankruptcy relies upon the rule that goods may be reclaimed on showing that the buyer was insolvent at the time of the sale, and that the sale was induced by his material false representations, even without proof that he did not intend to pay; but, in the absence of such material false representations, it is incumbent upon the seller to prove, not only that the buyer concealed his insolvency, but did not intend to pay for the goods when they were purchased. In re K. Marks & Co. (C. C. A.) 218 F. 453; In re New York Commercial Co. (C. C. A.) 228 F. 120; In re Sherman (C. C. A.) 13 F.(2d) 121. The trustee contends in this case that there is no evidence, either of a material false representation by the bankrupt, or of an intent on his part not to pay for the goods at the time of the sale.

Insolvency of the buyer at the time of sale does not always justify an inference of an intent on his part not to pay for the goods. Indeed, it has been said that a merchant is not obliged to close his doors as soon as he becomes aware of insolvency. If he believes in good faith that he can pull through by keeping on, his purchases are not fraudulent. In re Empire Grocery Co. (D. C.) 277 F. 73. In the case at bar, however, there is something more than the mere fact of insolvency. The deliberate issuance of the grossly false statement to the mercantile agency a short time before the goods were purchased is substantial evidence of fraudulent intent on the part of the buyer.

[3] But it is not necessary to rest the decision in this case on that ground, for the proof shows that in effect the buyer made material false representations to the seller at the time of the sale. It has been held that, when a mercantile agency gives to the seller a copy of a financial statement fraudulently furnished by the buyer, the false representation is attributable to the buyer, and reclamation of the goods may be allowed. In re J. S. Appel Suit & Cloak Co. (D. C.) 198 F. 322; In re Hamilton Furniture & Carpet Co. (D. C.) 117 F. 774; Eaton v. Avery, 83 N. Y. 31, 38 Am. Rep. 389. See, also, the cases under section 14b of the Bankruptcy Act (Comp. St. § 9598), involving opposition to the discharge of a bankrupt on the ground of a materially false statement by him to any person or his representative for the purpose of obtaining credit, in which it is held that the mercantile agency, under some circumstances, is the representative of the creditor. Haimowich v. Mandel (C. C. A. 3d Cir.) 243 F. 338; Ragan v. Cotton (C. C. A. 5th Cir.) 200 F. 546; Gerdes v. Lustgarten, 266 U. S. 321, 45 S. Ct. 107, 69 L. Ed. 309.

The trustee contends that the false statement of the agency was its own independent act, and hence the seller was not deceived by the fraud of the bankrupt. But there can be no doubt that the bankrupt was responsible for the fraud that was accomplished. The false statement was sent by it to the agency, so that in literal form or in substance it would be disseminated to deceive the trade. The agency was virtually instructed what to say, if inquired of. It gave a rating well within the scope of the statement. That which the agency said the bankrupt intended to be said. The connection of cause and effect is clearly established, and the trustee cannot avoid the consequence entailed by the evil conduct of the bankrupt.

The petition for reclamation will be granted.